# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

------------------------------------------------------x

LUXCLUB, INC.

                     Plaintiff,

        vs.

DGL GROUP LTD., EZRA ZAAFARANI,
MARK NAKASH, SOLOMON KOHL,
VICTOR SARDAR, AND ELIE WAHBA

                     Defendants.

------------------------------------------------------x

Index No. 18 Civ. 04741-MKB-ST

---

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

---

HERRICK, FEINSTEIN LLP
One Gateway Center
Newark, NJ 07102
973.274.2000

*Attorneys for Defendants DGL Group, LTD.,
Ezra Zaafarani, Mark Nakash, Victor Sardar,
and Elie Wahba*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF FACTS ......................................................................................2

ARGUMENT..........................................................................................................4

I.    The Claims Should Be Dismissed For Failure To Plead Causation ...........................5

II.    The RICO And Wire Fraud Causes Of Action (The Third and First Claims) Should Be Dismissed .......................................................................................6

    A.    Plaintiff Fails To Plead A Cognizable RICO Enterprise .........................7

    B.    Plaintiff Fails To Plead Any Defendants' Participation In The Rico Enterprise .........................................................................................9

    C.    Plaintiff Fails To Plead Racketeering Activity ...................................10

        1.    Plaintiff Fails To Plead Racketeering Activity Because It Fails To Plead Mail And/Or Wire Fraud Let Alone Two Predicate Acts ...............................................................................11

        2.    Plaintiff Fails To Plead Racketeering Activity Because It Fails To Plead Continuity ..........................................................13

    D.    Plaintiff Fails to Plead Proximate Cause .........................................15

    E.    Plaintiff Fails to Plead RICO Conspiracy .......................................16

III.    The Court Should Decline To Exercise Jurisdiction Over Plaintiff's State Law Claims (Second and Fourth-Ninth Claims).............................................17

IV.    Plaintiff's Claim for Conspiracy (Second Claim) Fails To State A Claim.................18

V.    Plaintiff's Claim for Unfair Competition (Ninth Claim) Fails To State A Claim.......................................................................................................18

VI.    Plaintiff's Claim for Breach of New York General Business Law § 349 (Eight Claim) Fails to State A Claim ..............................................................19

VII.    Plaintiff's Claim For Non-Infringement (Seventh Claim) Fails To State A Claim.......................................................................................................20

VIII.    Plaintiff's Warranty Claims (Fourth, Fifth, And Sixth Claims) Fail To State A Claim.......................................................................................................21

IX.    To The Extent Plaintiff Seeks To Plead A Claim For Breach Of Contract, Such Claim Is Directed Solely Against DGL And The Individual Defendants Should Be Dismissed ........................................................................................23

CONCLUSION.......................................................................................................23

i

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

A. Burton White, M.D., PC v. Beer,
679 F. Supp. 207 (E.D.N.Y. 1988) ...................................................................................13

Ashcroft v. Iqbal,
556 U.S. 662 (2009) .........................................................................................................5

Azrielli v. Cohen Law Offices,
21 F.3d 512 (2d Cir. 1994).................................................................................................9

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007)........................................................................................................4, 5

BWP Media USA Inc. v. Hollywood Fan Sites, LLC,
69 F. Supp. 3d 342 (S.D.N.Y. 2014)..................................................................................8

Carson Optical, Inc. v. Prym Consumer USA, Inc.,
11 F. Supp. 3d 317 (E.D.N.Y. 2014) ...........................................................................18, 19

Chambers v. Time Warner, Inc.,
282 F.3d 147 (2d Cir. 2002)...............................................................................................3

Coca–Cola North America v. Crawley Juice, Inc.,
2011 WL 1882845 (E.D.N.Y. May 17, 2011) ....................................................................18

Cofacredit, S.A. v. Windsor Plumbing,
187 F.3d 229 (2d Cir. 1999)........................................................................................14, 17

Crawford v. Franklin Credit Mgmt. Corp.,
758 F.3d 473 (2d Cir. 2014)................................................................................................7

Cruz v. FXDirectDealer, LLC,
720 F.3d 115 (2d Cir. 2013)............................................................................................7, 8

De Sole v. Knoedler Gallery, LLC,
974 F. Supp. 2d 274 (S.D.N.Y. 2013)........................................................................9, 10, 16

DeFalco v. Bernas,
244 F.3d 286 (2d Cir. 2001)......................................................................................6, 10, 14

Dura Pharms. v. Broudo,
544 U.S. 336 (2005)............................................................................................................5

Empire Merchants, LLC v. Reliable Churchill LLP,
    902 F.3d 132 (2d Cir. 2018)............................................................................15

Evercrete Corp., v. H-Cap Ltd.,
    429 F. Supp. 2d 612 (S.D.N.Y. 2006)...........................................................11

ExxonMobil Inter-Am., Inc. v. Advanced Info. Engin. Serv., Inc.,
    328 F. Supp. 2d 443 (S.D.N.Y. 2004)...........................................................19

FD Prop. Holding Inc. v. U.S. Traffic Corp.,
    206 F. Supp. 2d 362 (E.D.N.Y. 2002) ..........................................................13

First Capital Asset Mgmt., Inc. v. Satinwood, Inc.,
    385 F.3d 159 (2d Cir. 2004)...............................................................7, 8, 17

Freund v. Lerner,
    2010 WL 3156037 (S.D.N.Y. Aug. 10, 2010) ................................................7

Greenberg v. Blake,
    2010 WL 2400064 (E.D.N.Y. June 10, 2010) .............................................7, 10

H.J. Inc. V. Nw. Bell Tel. Co.,
    492 U.S. 229 (1989)..........................................................................11, 13, 14

Henry v. City of New York,
    2007 WL 1062519 (E.D.N.Y. Mar. 30, 2007) ..............................................12

Holmes v. Sec. Investor Prot. Corp.,
    503 U.S. 258 (1992)........................................................................................15

Horowitz v. Stryker Corp.,
    613 F. Supp. 2d 271 (E.D.N.Y. 2009) ...........................................................23

Innovation Ventures, LLC v. Ultimate One Distrib. Corp.,
    2016 WL 1274011 (E.D.N.Y. Mar. 31, 2016)................................................21

Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp.,
    98 F. Supp. 2d 480 (S.D.N.Y. 2000)..............................................................20

Kalimantano GMBH v. Motion in Time, Inc.,
    939 F. Supp. 2d 392 (S.D.N.Y. 2013).....................................................13, 14, 15

Katzman v. Victoria's Secret Catalogue,
    167 F.R.D. 649 (S.D.N.Y. 1996) .....................................................................6

Klein & Co. Futures v. Bd. of Trade of City of New York,
    464 F.3d 255 (2d Cir. 2006)............................................................................17

iii

Knoll v. Schectman,
    275 Fed. App'x 50 (2d Cir. 2008)............................................................................17

Kolari v. New York–Presbyterian Hosp.,
    455 F.3d 118 (2d Cir. 2006).................................................................................17

Mackin v. Auberger,
    59 F. Supp. 3d 528 (W.D.N.Y. 2014) ...................................................................16

McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.,
    904 F.2d 786 (1st Cir. 1990)................................................................................11

McLaughlin v. Anderson,
    962 F.2d 187 (2d Cir. 1992).............................................................................9, 11

N.Y.S. Catholic Health Plan, Inc. v. Acad. O & P Assocs.,
    312 F.R.D. 278 (E.D.N.Y. 2015) ....................................................................11, 12

Payday Advance Plus, Inc. v. Findwhat.com, Inc.,
    478 F. Supp. 2d 496 (S.D.N.Y. 2007)...................................................................18

Petrosurance, Inc. v. Nat'l Ass'n of Ins. Comm'rs,
    888 F. Supp. 2d 491 (S.D.N.Y. 2012) aff'd, 514 Fed App'x 51 (2d Cir. 2013)......................15

Picard v. Kohn,
    907 F. Supp. 2d 392 (S.D.N.Y. 2012)...................................................................17

Reves v. Ernst & Young,
    507 U.S. 170 (1993).............................................................................................9

Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,
    30 F.3d 339 (2d Cir. 1994)....................................................................................8

Sanchez v. ASA College, Inc.,
    2015 WL 3540836 (S.D.N.Y. June 5, 2015) ........................................................13

SKS Constr. Inc. v. Drinkwine,
    458 F. Supp. 2d 68 (E.D.N.Y. 2006) ...................................................................14

Spirit Locker, Inc. v. EVO Direct, LLC,
    696 F. Supp. 2d 296 (E.D.N.Y. 2010) .................................................................19

Stampede Presentation Prods., Inc. v. M&A Intern'l Inc.,
    2019 WL 690680, at *4 (W.D.N.Y. Jan. 4, 2019), report and recommendation
    adopted, 2019 WL 688409 (W.D.N.Y. Feb. 19, 2019)...........................................20

U. S. v. Autuori,
    212 F.3d 105 (2d Cir. 2000)................................................................................11

U.S. v. Ciccone,
   312 F.3d 535 (2d Cir. 2002)..................................................................................16

Zaro Licensing, Inc. v. Cinmar, Inc.,
   779 F. Supp. 276 (S.D.N.Y. 1991) ...................................................................12, 13

## State Cases

Abe's Rooms, Inc. v. Space Hunters, Inc.,
   38 A.D.3d 690, 833 N.Y.S.2d 138 (2d Dep't 2007)..............................................18

Comsewogue Union Free Sch. Dist. v. Allied-Trent Roofing Sys., Inc.,
   272 A.D.2d 360 707 N.Y.S.2d 657 (2d Dep't 2000).............................................22

Dickinson v. Igoni,
   76 A.D.3d 943, 908 N.Y.S.2d 85 (2d Dep't 2010) ...............................................18

Gordon v. Ford Motor Co.,
   239 A.D.2d 156, 657 N.Y.S.2d 43 (1st Dep't 1997) ............................................22

Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,
   85 N.Y.2d 20, 623 N.Y.S.2d 529 (1995) .............................................................19

Pappas v. Passias,
   271 A.D.2d 420, 707 N.Y.S.2d 178 (2d Dep't 2000)...........................................18

Schimmenti v. Ply Gem Industries, Inc.,
   156 A.D.2d 658, 549 N.Y.S.2d 152 (2d Dep't 1989)...........................................23

Sutton Assocs. v. Lexis–Nexis,
   196 Misc.2d 30, 761 N.Y.S.2d 800 (Sup. Ct Nassau Cnty. 2003) .........................20

Teller v. Bill Hayes, Ltd.,
   213 A.D.2d 141, 630 N.Y.S.2d 769 (2d Dep't 1995) ...........................................19

Williams v. Williams,
   149 A.D.3d 1145, 53 N.Y.S.3d 152 (2d Dep't 2017), leave to appeal denied,
   30 N.Y.3d 913, 71 N.Y.S.3d 7 (2018) ................................................................18

Wojcik v. Empire Forklift, Inc.,
   14 A.D.3d 63, 783 N.Y.S.2d 698 (3d Dep't 2004) ..............................................21

## Statutes

18 U.S.C. § 1341.........................................................................................................11

18 U.S.C. § 1343.........................................................................................................11

18 U.S.C. § 1961(5)....................................................................................................10

18 U.S.C. §§ 1962(a)-(c) .................................................................................6, 16

18 U.S.C. § 1962(c) ..............................................................................6, 7, 9, 16

18 U.S.C. § 1962(d) ...........................................................................6, 16, 17

18 U.S.C. § 1964(c) ......................................................................................6

New York General Business Law § 349 ..........................................................19, 20

Racketeer Influenced and Corrupt Organizations Act .......................................... passim

U.C.C. § 2-312(3) ................................................................................20, 21

U.C.C. § 2-314 ..........................................................................................21

U.C.C. § 2-315 ..........................................................................................22

## **Rules**

Fed. R. Civ. P. 8 ..........................................................................................1

Fed. R. Civ. P. 9(b) .................................................................................1, 11

Fed. R. Civ. P. 12(b)(6).........................................................................1, 4, 8

Defendants DGL Group, Ltd. ("DGL"), Ezra Zaafarani ("Zaafarani"), Mark Nakash ("Nakash"), Victor Sardar ("Sardar") and Elie Wahba ("Wahba" and collectively "Defendants") respectfully submit this memorandum of law in support of their motion for an order, pursuant to Fed. R. Civ. P. 8, 9(b), and 12(b)(6), dismissing the Complaint filed August 22, 2018 (the "Complaint," ECF No. 1) by plaintiff LuxClub, Inc. ("LuxClub" or "Plaintiff").

## PRELIMINARY STATEMENT

Plaintiff, the operator and owner of an Amazon storefront, alleges that it ordered Samsung wireless chargers for cell phones from an intermediary OEM distributor of overseas products, Defendant DGL, but received some undisclosed amount of inauthentic and/or counterfeit goods with its deliveries. All of this occurred in 2015 and is not alleged to have been repeated since. Both Plaintiff and DGL are New York entities.

Per Plaintiff, Samsung discovered the issue after investigating the sales of its products on Amazon. Samsung filed an infringement complaint with Amazon, allegedly resulting in harm to Plaintiff's operations. Plaintiff simultaneously alleges that Samsung swiftly withdrew the infringement complaint, but supplies no other information to clarify this inconsistency.

Nevertheless, against this simple backdrop, Plaintiff has corralled multiple employees of DGL as defendants in this litigation, and asserted nine separate causes of action – two federal and seven based on state law – against each Defendant, whether an entity or an unsuspecting individual. The causes of action range in nature from a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and the federal wire fraud statute, to state law claims of unfair competition, deceptive business practices, breach of warranty, and conspiracy. Clearly, Plaintiff has not only thrown in the proverbial kitchen sink, but it is also looking for any means of (i) gaining entrance into this federal forum; (ii) to prosecute a baseless RICO claim; (iii) in order to overshadow the limited issues in controversy with the specter of mandatory treble damages and

attorneys' fees that are available to RICO claimants. This is par for the course with RICO claims, which is the very reason why such claims merit particular scrutiny at the motion to dismiss stage.

Plaintiff's RICO claim fails every single element – Plaintiff fails to plead proximate cause, a cognizable enterprise, each Defendant's participation in an enterprise, or a pattern of racketeering (in fact no cognizable wire fraud is pled). Simply stated, Plaintiff's federal claims fail in total. And Plaintiff's myriad state law claims fare no better, at least as to the individual defendants.

This case is nothing more than a business dispute between Plaintiff and DGL as to the products ordered versus the products delivered. All of the claims should be dismissed and this case should proceed, if at all, in state court.

## **STATEMENT OF FACTS**[1]

Plaintiff is the owner and operator of IncaDove, an Amazon storefront through which it sells consumer electronics that it acquires from distributors. (Compl. ¶ 20). DGL, a "gray market" dealer, was one such distributor. (Compl. ¶¶ 8, 21, 24, 50).[2]

According to Plaintiff, it entered into agreements with "Defendants" to purchase authentic Samsung electronic goods over the course of several months. (Compl. Introduction). One such product was Samsung wireless chargers for cell phones ("Samsung Chargers"). (Id.) However, Plaintiff alleges that it received inauthentic Samsung Chargers instead. (Id.) Specifically, from September 2015 to November 2015, the first three months of parties' year-long business relationship, Plaintiff states that it purchased "hundreds" of Samsung Chargers from DGL.

---

[1] The Statement of Facts is taken from the factual allegations pleaded in the Complaint which are deemed accepted as true for the purposes of the DGL Defendants' motion to dismiss only.

[2] The gray market is a market in which importers who are not one of a manufacturers' authorized distributors, like DGL, legally import a manufacturer's product from abroad and sell the product domestically in competition with dealers who are within the manufacturer's authorized distribution chain. https://www.referenceforbusiness.com/encyclopedia/Gov-Inc/Gray-Market.html.

(Compl. ¶¶ 32, 42).  Some Samsung Chargers – Plaintiff fails to allege how many – were allegedly near identical counterfeits instead of authentic Samsung goods.  (Compl. ¶¶ 42, 47, 92).

Samsung allegedly filed a complaint against IncaDove with Amazon in or around November 2016, purportedly resulting in Amazon suspending the entire IncaDove storefront for nearly a year, and thereafter barring IncaDove from selling Samsung products on Amazon. (Compl. ¶¶ 86-88, 113-118).  However, Plaintiff's accusations and the harm alleged make little sense.  Plaintiff alleges that Samsung withdrew its complaint.  (Compl. ¶ 116).  But Plaintiff offers no explanation as to why Amazon continued its alleged suspension of IncaDove after Samsung withdrew its complaint except to state that Amazon did so "despite the claim by Amazon to the contrary."  (Compl. ¶¶ 78-79, 116).  Plaintiff also complains that DGL refused as distributor to write a letter of authenticity on Plaintiff's behalf to aid Plaintiff with its appeal to Amazon. (Compl. ¶ 49).  The proposed letter of authenticity is dated as of August 2016 – well before the suspension – and makes no reference at all to any of the Samsung Chargers allegedly in issue.  (A copy of the letter is attached to the Certification of David King as Exhibit A (the "King Cert.").[3]

Regardless, from the foregoing allegations (i.e. a purchase of Samsung Chargers and the delivery of purportedly counterfeit product), Plaintiff springs to the conclusion that there must be a RICO enterprise, consisting of DGL and its officers, employees and agents, to purposefully manufacture in some yet undisclosed secret warehouse, or to purposely purchase and sell, counterfeit Samsung Chargers to Plaintiff.  (Compl. ¶¶ 91-92, 127-134).  Perhaps in recognition of the very tenuous thread upon which its pleading is based, Plaintiff attempts to bolster its story by vaguely alleging that DGL: (i) sells low quality products; (ii) provides poor customer service;

---

[3] In making that determination, a court may look to the pleadings as well as to any documents integral to the complaint upon which the pleadings rely.  Chambers v. Time Warner, Inc., 282 F.3d 147, 152–53 (2d Cir. 2002).

(iii) has had goods seized by investigators (the time, goods, and subject of such seizure and investigation are not alleged); and (iv) has either been accused, or has done business with other entities that have been accused, of selling "inauthentic, or defective goods." (Compl. ¶¶ 22, 28-30, 89).  As to the latter allegation, Plaintiff alleges that Wahba, prior to joining DGL, told Plaintiff he was taking a job with a company that supplied Mobile Star with merchandise, and Mobile Star was sued in 2016 by Apple for allegedly distributing counterfeit goods.  (Compl. ¶ 90).  None of these "facts" nudges the Complaint beyond the equally likely conclusion that **if** any counterfeit products were sole, neither DGL nor any of its officers, agents or employees intended a scheme to distribute counterfeit goods or knew of any counterfeit products at the time. (Compl. ¶ 92).

As to each Defendant individually, the Complaint is even more lacking.  Plaintiff alleges:

1. Wahba is DGL's sales representative, and he (i) at some point referred to the chargers as "Samsung" chargers; (ii) was typically the person through whom orders were placed; and (iii) defended his company as a supplier of authentic goods (Compl. ¶¶ 23, 26-27, 45, 46);

2. Sardar handles complaints for DGL, and defended DGL as a seller of authentic products after Plaintiff accused otherwise as well (Compl. ¶¶ 27, 29, 45); and

3. Zaafarani and Nakash are directors and officers of DGL, thus, "upon information and belief" they must have agreed to risk DGL's reputation as a "major US company that sold to other companies such as Walmart," to sell some undisclosed amount of counterfeit Samsung Chargers to Plaintiff.  (Compl. ¶¶ 53-59).

The foregoing comprises the sum and substance of the relevant allegations pled against the individual Defendants in the entirety of the 177 paragraph RICO Complaint. The limited factual recitation set forth by Plaintiff is simply insufficient to support the causes of action pleaded.

## ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). To state a claim for relief that is facially plausible, an allegation must be

"more than an unadorned, the-defendant-unlawfully-harmed me accusation:" a claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Accordingly, where a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Twombly, 550 U.S. at 570.

## I.    The Claims Should Be Dismissed For Failure To Plead Causation

A complaint must be dismissed if it lacks factual allegations plausibly showing that a defendant's purportedly unlawful conduct, rather than some other cause, is responsible for the plaintiff's injury.   Twombly itself illustrates this principle.   There, the plaintiff alleged that telecommunications companies engaged in anticompetitive "parallel conduct." Twombly, 550 U.S. at 550. The "crucial question" was whether the parallel conduct was the result of an independent decision at each company, which would be unobjectionable, or the result of a conspiracy among the companies, which would be illegal. Id. at 553. Given these two possible alternative causes, the Supreme Court refused to assume that illegal conduct was the cause.  Id. at 557. See also, Dura Pharms. v. Broudo, 544 U.S. 336, 343 (2005) (finding complaint deficient where there were many potential causes for a drop in stock price that the complaint did not consider or address).

The Complaint in this case suffers from the same infirmity.  Plaintiff alleges it received counterfeit product from DGL, but Plaintiff does not set forth any set of facts supporting a scheme or conspiracy to manufacture and/or distribute counterfeit goods as alleged.  Nothing has been pled that would nudge this case toward conspiracy to defraud over the equally plausible conclusion that **if** there were any counterfeit product, DGL did not know of the inauthenticity either.

## II.   The RICO And Wire Fraud Causes Of Action (The Third and First Claims) Should Be Dismissed

RICO confers a private right of action for treble damages upon "[a]ny person injured in his business or property by reason of a violation" of the RICO statute. 18 U.S.C. § 1964(c). The RICO statute, in relevant part, makes it unlawful, "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). To establish a civil RICO claim, a plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." DeFalco v. Bernas, 244 F.3d 286, 306 (2d Cir. 2001) (citations omitted).  18 U.S.C. § 1962(d) separately prohibits any person from conspiring to violate any of the substantive provisions of §§ 1962(a)-(c). As far as the Complaint can be understood, Plaintiff seems to conflate 1962(c) and (d) in a single cause of action, alleging the existence of an enterprise and the commission of predicate acts as well as conspiracy to violate the RICO statute.  (Compl. ¶¶ 127-134).

Because "the mere assertion of a RICO claim has an almost inevitable stigmatizing effect on those named as defendants," – and undoubtedly since liability premised on such claims carry with them the threat of treble damages and attorneys' fees – civil RICO has been referred to as the "litigation equivalent of a thermonuclear device." Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (citations omitted).   Accordingly, courts are encouraged to dismiss RICO allegations at an early stage of the litigation where it is otherwise appropriate to do so. Id. Moreover, RICO claims premised on mail and wire fraud merit heightened scrutiny in light of "the routine use of mail and wire communications in business operations" and the attendant ease with which a plaintiff may attempt to fashion a RICO claim based on allegations that may turn out

to be insufficient to plausibly support one. Crawford v. Franklin Credit Mgmt. Corp., 758 F.3d 473, 489 (2d Cir. 2014) (citation omitted).

### A.     Plaintiff Fails To Plead A Cognizable RICO Enterprise

"'Any principled analysis of a RICO claim ... must begin from an understanding of what enterprise is alleged.'" Freund v. Lerner, 2010 WL 3156037, at *6 (S.D.N.Y. Aug. 10, 2010) (citation omitted).  An enterprise is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 173 (2d Cir. 2004).   For an association to constitute an enterprise, the individuals must share a common purpose to engage in a particular fraudulent course of conduct to achieve such a purpose. Cruz v. FXDirectDealer, LLC, 720 F.3d 115, 120 (2d Cir. 2013).  Moreover, under the so-called "distinctiveness" requirement, a plaintiff must allege the existence of two distinct entities, a "person" and an "enterprise" that is not simply the same "person" referred to by a different name. Id.  Plaintiff's thesis in its matter is that (i) DGL, (ii) the Defendants herein (i.e. DGL's CEO, Vice President, salesperson, and agent), and (iii) DGL's accounting employee formed an association-in-fact enterprise.  (Compl. ¶ 131).

First, the Complaint fails to meet the distinctiveness requirement.  As an initial matter, Plaintiff fails to distinguish the individual Defendants from the alleged enterprise, which alone is fatal to its claim.  Greenberg v. Blake, 2010 WL 2400064, at *6 (E.D.N.Y. June 10, 2010).[4] Separately, Courts have repeatedly dismissed complaints with § 1962(c) claims, like the Complaint here, alleging that a corporation was simultaneously a RICO "person" and a RICO "enterprise" or part of a RICO "enterprise" from which the corporation is not distinct. See, e.g., Cruz, 720 F.3d at

---

[4] Even when a plaintiff alleges that a RICO enterprise consists of an association-in-fact, the plaintiff must still show that the defendants formed a separate entity with a distinct structure. Id.; Freund, 2010 WL 3156037 at *6.

7

120-21; Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339, 344 (2d Cir.

1994). In Riverwoods, the Second Circuit held that a complaint failed to state a RICO claim

because the plaintiffs alleged that the corporation was a RICO "person," and that the corporation

plus all its employees and agents was the RICO "enterprise," from which the corporation was not

distinct. 30 F.3d at 344. In Cruz, the Court of Appeals held that the complaint's allegations failed

to satisfy the distinctness requirement where a corporation was alleged to be a RICO "person"

conducting the deceptive practices of a RICO "enterprise" not distinct from the corporation. Cruz,

720 F.3d at 120–21. Similarly, the enterprise alleged here fails for lack of distinctiveness.

Second, Plaintiff fails to adequately allege that the "persons" associated in fact shared a

common purpose to engage in either the manufacture or sale of counterfeit goods. To withstand a

Rule 12(b)(6) motion, a plaintiff must "explain each participant's role in the alleged course of

fraudulent or illegal conduct" to show the enterprise members "functioned as a unit." First Capital

Asset Mgmt., 385 F.3d at 174-75. All that is alleged against Wahba is that he (i) acted as a point

of contact for purchases of merchandise, (ii) offered Samsung Chargers for sale to Plaintiff, and

(iii) defended DGL as a seller of authentic products. There is not a single fact pled that Wahba

intended to sell allegedly counterfeit merchandise and associated with any other Defendant for that

purpose. All that is alleged against Sardar is that he defended his company as a seller of authentic

goods as well. As to Zaafarani and Nakash, all that is alleged is that they controlled the operations

of DGL as officers and/or directors, nothing more. Plaintiff has failed to plead any hierarchy,

organization or association to commit a scheme to defraud and has resorted to mere statements, in

a conclusory manner, of each individual's title and role within DGL instead. BWP Media USA

Inc. v. Hollywood Fan Sites, LLC, 69 F. Supp. 3d 342, 360 (S.D.N.Y. 2014).

**B.**     **Plaintiff Fails To Plead Any Defendants' Participation In The Rico Enterprise**

A RICO plaintiff must allege that the defendants "conduct[ed] or participate[d], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c); see Reves v. Ernst & Young, 507 U.S. 170, 177–79 (1993).  In Reves, the Supreme Court explained that this statutory language means that the defendant must have had "some part in directing [the enterprise's] affairs." Reves, 507 U.S. at 179; see also Azrielli v. Cohen Law Offices, 21 F.3d 512, 521 (2d Cir. 1994) (RICO defendant must have participated in the operation or management of the enterprise).[5]

The facts pleaded are insufficient to support a claim that any Defendant participated in, or played some part in directing the affairs of, the alleged enterprise.  De Sole v. Knoedler Gallery, LLC, 974 F. Supp. 2d 274 (S.D.N.Y. 2013) is instructive.  In De Sole, the Southern District of New York did find that an enterprise was adequately alleged regarding the sale of forged paintings, but only as to certain defendants.  As to other of the defendants – against whom the facts pled were materially more substantial than any facts alleged here – the complaint entirely missed the mark.

In De Sole, art collectors who had purchased artwork purportedly painted by well-known abstract expressionist artists, but which turned out to be forgeries, filed suit against the art gallery, the gallery's officer and employee, the art dealer, the gallery's owner and beneficial owner, and the "live-in" companion of the art dealer.  As to the gallery, officer, employee and art dealer, the facts alleged were markedly particularized.  In De Sole, the employee persuaded the gallery to use the art dealer, who had a far-fetched story of the provenance of the paintings in issue, and when the provenance was called into question, the employee, officer and art dealer all worked together to

---

[5] It has alternately been stated that a plaintiff must allege, at minimum, that a defendant personally committed or aided and abetted the commission of two predicate acts.  McLaughlin v. Anderson, 962 F.2d 187 (2d Cir. 1992).

9

create a new, and known to be false, provenance for the paintings to allow the gallery to continue sales. Id. at 302-305. The officer made knowingly false representations to clients as to the gallery's direct relationship with the owner of the paintings listed for sale. Id. at 289-90. And the officer, employee and art dealer worked together to defend against claims of forgery and hide the results of forensic tests that demonstrated certain works were forgeries. Id. at 291-92. Facts supporting each of the foregoing was alleged. As to these defendants alone, the complaint adequately pled participation in a RICO enterprise. Id. at 302-05.

The beneficial owner profited from the fraud, and knew that the provenance of the paintings had been called into question and that the gallery was being paid outsized profits for the paintings. But these facts, even accepted as true, did not demonstrate participation in or knowledge of the enterprise. Id. at 302-304. As to the "live-in" companion, he had been accused of selling forged artwork overseas, and payments in connection with the forged paintings were wired to his brother. Neither these facts, nor his relationship with the art dealer, was sufficient. Id. at 305.

Here, none of the facts pleaded against any of the Defendants rise to the level of even those pleaded against the beneficial owner and "live-in" companion in De Sole. There are no facts alleged, circumstantial or otherwise, to suggest that any of the Defendants had knowledge of, or took acts intended to further, any alleged scheme to manufacture and/or sell allegedly counterfeit goods. For example, there are no facts to suggest Defendants plotted together, worked together in a coordinated fashion, or split any of the allegedly ill-gotten gains. Greenberg, 2010 WL 2400064, at *7. For this reason too, the RICO claim fails.

### C.   Plaintiff Fails To Plead Racketeering Activity

To be liable under the RICO statute, a defendant must commit "at least two acts of racketeering activity," "the last of which occurred within ten years ... after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5); DeFalco v. Bernas, 244 F.3d 286, 306 (2d

10

Cir. 2001) (internal citation omitted).  The predicate acts must be "related" and "amount to or pose a threat of continued criminal activity."  H.J. Inc. V. Nw. Bell Tel. Co., 492 U.S. 229, 239 (1989). Plaintiff's RICO claim is premised upon alleged wire and mail fraud; and Plaintiff purports to set forth a separate claim for wire fraud.

> **1.** **Plaintiff Fails To Plead Racketeering Activity Because It Fails To Plead Mail And/Or Wire Fraud Let Alone Two Predicate Acts**

"RICO defines racketeering activity to include mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343." Evercrete Corp., v. H-Cap Ltd., 429 F. Supp. 2d 612, 623 (S.D.N.Y. 2006).  The elements of mail and wire fraud are "(i) a scheme to defraud (ii) to get money or property, (iii) furthered by the use of interstate mail or wires." U. S. v. Autuori, 212 F.3d 105, 115 (2d Cir. 2000).  As to the first element, a plaintiff must demonstrate "(i) the existence of a scheme to defraud, (ii) the requisite scienter (or fraudulent intent) on the part of the defendant, and (iii) the materiality of the misrepresentations." Id.  (internal citations omitted). See also McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc., 904 F.2d 786, 791 (1st Cir. 1990) ("[N]ot every use of the mails or wires in furtherance of an unlawful scheme ... constitutes mail or wire fraud.").

Where the predicate acts alleged involve mail or wire fraud, allegations must satisfy the particularity requirement of Rule 9(b). See McLaughlin, 962 F.2d at 191. Fed. R. Civ. P. 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." However, "[w]hile knowledge of the fraud or intent to defraud on the part of the defendant may be averred generally, Rule 9(b) also requires that allegations of 'scienter' to be supported by facts giving rise to a strong inference that defendant knew the statements to be false and intended to defraud plaintiff." N.Y.S. Catholic Health Plan, Inc. v. Acad. O & P Assocs., 312 F.R.D. 278, 298-99 (E.D.N.Y. 2015) (internal citation omitted) (emphasis added). The plaintiff

must allege "(1) specific facts; (2) sources that support the alleged specific facts; and (3) a basis from which an inference of fraud may fairly be drawn." Henry v. City of New York, 2007 WL 1062519, at *3 (E.D.N.Y. Mar. 30, 2007). Allegations of mail or wire fraud must "specify the use of the mails and wires with particularity." Zaro Licensing, Inc. v. Cinmar, Inc., 779 F. Supp. 276, 281 (S.D.N.Y. 1991). Moreover, "[a]bsent particularity as to each participant's assent to the alleged 'scheme' or 'conspiracy,'" allegations of mail or wire fraud cannot be sustained. Id. at 282.

The gravamen of this action is that Plaintiff ordered, but did not receive, authentic Samsung products. (Compl. Introduction). Plaintiff's claims sound in breach of contract, not mail and/or wire fraud. A breach of contract, without more, does not amount to actionable fraud. Id. at 282; Catholic Health Plan, 312 F.R.D. 278 at 299.

Separately, Plaintiff's claims do not state a claim for wire and/or mail fraud, nor do they state a claim for two predicate acts. Plaintiff avers that Wahba, in "multiple conversations," referred to the chargers in issue as "Samsung Chargers." (Compl. ¶ 45). Plaintiff appends to the Complaint two emails in which Wahba lists Samsung Chargers for sale through DGL. (Declaration of Abraham Mosseri, ECF No. 14 ("Mosseri Decl."), Ex. 2 and 5). Plaintiff also appends to the Complaint seven invoices, allegedly sent via email, evidencing Plaintiff's purchase of what should be Samsung Chargers. (Compl. ¶ 42). The problem with the foregoing is at least four-fold. First, there is insufficient particularity as to which, if any, of the alleged marketing emails or invoices were false and there is no particularity pleaded as to the "multiple conversations" alleged. Second, and in the same vein, it is entirely unclear how much product was allegedly counterfeit, whether such product arrived in one or multiple orders, and thus whether there was one, or more than one, allegedly false promotion or invoice. Thus, it is impossible to presume more than one predicate act. Third, claims for wire and mail fraud also necessarily fail because, even assuming that any

marketing emails or invoices were false, there are no facts from which scienter could be inferred. There is no indication that any Defendant understood or intended that DGL sell counterfeit product. No plausible motive is pled.  Nor has Plaintiff pled any facts to suggest conscious misbehavior or recklessness.  Sanchez v. ASA College, Inc., 2015 WL 3540836, at *7 (S.D.N.Y. June 5, 2015). See, e.g., A. Burton White, M.D., PC v. Beer, 679 F. Supp. 207, 211 (E.D.N.Y. 1988) (failure to adequately plead scienter and fraud required dismissal of wire and mail fraud claims); Zaro Licensing, 779 F. Supp. at 285 (failure to allege facts giving rise to strong inference of scienter defeats fraud claims).  Fourth, there are absolutely no facts pled with particularly that establish each separate Defendants' alleged assent to any scheme or conspiracy; thus, such claims cannot be maintained.

### 2.     Plaintiff Fails To Plead Racketeering Activity Because It Fails To Plead Continuity

As stated, to show a pattern of racketeering activity requires that a plaintiff establish not only the commission of two predicate acts, but also that such acts are "related" and "continuous." H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239 (1989). The continuity requirement may be satisfied in only one of two ways.  A plaintiff must allege either a "closed-ended" pattern of racketeering activity (past criminal conduct extending over a substantial period of time) or an "open-ended" pattern of racketeering activity (past criminal conduct combined with a threat of future criminal conduct).  FD Prop. Holding Inc. v. U.S. Traffic Corp., 206 F. Supp. 2d 362, 370 (E.D.N.Y. 2002).  Plaintiff has not alleged, and cannot allege, the required continuity.

Close-ended continuity is a primarily temporal concept, and the Second Circuit has never held a period of racketeering activity lasting less than two years to be substantial enough to qualify as close-ended continuity.  Kalimantano GMBH v. Motion in Time, Inc., 939 F. Supp. 392, 412 (S.D.N.Y. 2013).  Here, the alleged fraud in issue occurred from roughly September through

November 2015.  The period is not substantial enough as a matter of law for close-ended continuity, and no other facts alleged support a claim of close-ended continuity.  Cofacredit, S.A. v. Windsor Plumbing, 187 F.3d 229, 242 (2d Cir. 1999) (explaining that close-ended continuity requires continued criminal activity over a substantial period of times, and that predicate acts allegedly extending over a few weeks or months do not satisfy this requirement).

Open-ended continuity requires a threat of continuing criminal activity beyond the period during which the predicate acts were performed. Id.  Where, as here, the alleged enterprise primarily conducts a legitimate business, there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity.  Id.; H.J., 492 U.S. at 243. Specifically, there "must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity." DeFalco, 244 F.3d at 323 (emphasis added).

As the court in Kalimantano explained, the Second Circuit's decision in Cofacredit provides guidance. There, the Second Circuit held that a district court had erred in finding open-ended continuity, despite proof that defendants had engaged in mail and wire fraud against the plaintiffs for more than a year. The Second Circuit held that there was insufficient evidence to support a finding that the incidents of fraud were a regular means by which the Cofacredit defendants conducted their plumbing supply business. Cofacredit, 187 F.3d at 244. Instead, the Second Circuit determined that the evidence showed a "discrete and relatively short-lived scheme to defraud a handful of victims through racketeering activity." Id.  Cf. SKS Constr. Inc. v. Drinkwine, 458 F. Supp. 2d 68, 80 (E.D.N.Y. 2006) (plaintiffs' allegation that predicate acts were only way business operated sufficient to establish open-ended continuity for purpose of motion to dismiss).

14

Moreover, the type of fraudulent conduct alleged here does not support a finding that the nature of the alleged predicate acts themselves implies a threat of continued activity.  See Kalimantano, 939 F. Supp. 2d at 407-08 (where the alleged racketeering activity is in connection with businesses or endeavors that are not inherently unlawful, such as fraudulent acts in connection with the sale of property, courts generally have not found a threat of continuing criminal activity arising from the nature of the conduct alone, even if it extended over even longer periods).

Measured against these standards, the allegedly fraudulent practices in the marketing of Samsung Chargers does not imply a threat of continued criminal activity over time.  Id. at 408 (collecting cases).

### D.        Plaintiff Fails to Plead Proximate Cause

Finally, Plaintiff's RICO claim fails because Plaintiff has not pled proximate cause.  Where a RICO violation is predicted on fraud, a plaintiff must allege that the defendants' acts were not only the "but for" cause of the plaintiff's injury but also the proximate cause as well, necessitating some direct relation between the injury and the injurious conduct alleged.  Petrosurance, Inc. v. Nat'l Ass'n of Ins. Comm'rs, 888 F. Supp. 2d 491, 503-04 (S.D.N.Y. 2012) aff'd, 514 Fed App'x 51 (2d Cir. 2013); Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 265-270 (1992).  Related to this inquiry are the questions of whether it would be difficult to determine how much the allegedly tortious conduct injured the plaintiff as opposed to other factors and whether more directly injured victims are better suited as plaintiffs.  Empire Merchants, LLC v. Reliable Churchill LLP, 902 F.3d 132, 141 (2d Cir. 2018).

In this matter, Plaintiff alleges that Defendants' purported wire and mail fraud caused Samsung to file an infringement letter, which resulted in the IncaDove storefront to be shut down for nearly a year, and IncaDove being barred thereafter from selling Samsung products.  (Compl. Introduction and ¶¶ 113-118).  The harm alleged is not direct.  Plaintiff concedes that Samsung

withdrew its complaint and that Amazon apparently took the position that the account was not suspended. The harm does not flow from Defendants to LuxClub. Finally, it is surely the case that the end-purchasers of allegedly inauthentic product and/or Samsung itself would be better suited as plaintiffs. For this reason too, the RICO claim should be dismissed.

### E.     Plaintiff Fails to Plead RICO Conspiracy

In its single cause of action pleaded for violation of the RICO statute, Plaintiff appears to shoehorn together claims that may arise under § 1962(c) and § 1962(d), as Plaintiff appears to allege the commission of predicate acts by an alleged enterprise and also a RICO conspiracy. Section 1962(d) prohibits any person from conspiring to violate the substantive provisions of §§ 1962(a)-(c). For a RICO conspiracy claim, a plaintiff must allege: that "(i) the defendants agreed to form and associate themselves with a RICO enterprise; (ii) the defendants agreed to commit two predicate acts in furtherance of a pattern of racketeering activity in connection with the enterprise; and (iii) if the agreed-upon predicate acts had been carried out, they would have constituted a pattern of racketeering activity." Mackin v. Auberger, 59 F. Supp. 3d 528, 555 (W.D.N.Y. 2014).[6] To be found guilty of RICO conspiracy, a defendant must know of, and agree to, the general criminal objective of a jointly undertaken scheme. U.S. v. Ciccone, 312 F.3d 535, 542 (2d Cir. 2002) (stating that "a conspirator charged with racketeering conspiracy need not commit or even agree to commit the predicate acts ... it suffices that he adopt[ed] the goal of furthering or facilitating the criminal endeavor" (internal citations and quotations marks omitted)).

Analysis of a RICO conspiracy claim begins with the premise that any claim for conspiracy under § 1962(d) necessarily fails where the underlying substantive claim is insufficiently pled.

---

[6] A RICO conspiracy claim requires an allegation that the defendants agreed to participate in "a charged enterprise's affairs' through a pattern of racketeering 'not a conspiracy to commit predicate acts.'" De Sole, 974 F. Supp. 2d at 311 (citing U.S. v. Pizzonia, 577 F.3d 455 (2d Cir. 2009)).

Cofacredit, 187 F.3d at 244–45 ("A conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense ....").   As the Complaint fails to adequately allege (i) the existence of an enterprise, or (ii) that any of the Defendants conducted the affairs of the alleged enterprise, the conspiracy claims related to those substantive RICO claims must be dismissed.   See First Capital Asset Mgmt., 385 F.3d at 182 (affirming dismissal of § 1962(d) claim where plaintiff failed adequately to allege any substantive violation of RICO); Knoll v. Schectman, 275 Fed. App'x 50, 51 (2d Cir. 2008) (same).

Separately, Plantiff does not allege that any of the Defendants had a meeting of the minds to commit predicate RICO acts, and Plaintiff's apparent general allegations that Zaafarani and Nakash committed some conspiracy are insufficient.  (Compl. Section VII, at pp. 16-17).  Plaintiffs "must allege 'some factual basis for a finding of a conscious agreement among the defendants.'" Picard v. Kohn, 907 F. Supp. 2d 392, 400 (S.D.N.Y. 2012).  There is nothing in the Complaint from which the Court can infer any Defendants' agreement to join a conspiracy.

**III.   The Court Should Decline To Exercise Jurisdiction Over Plaintiff's State Law Claims (Second and Fourth-Ninth Claims)**

The Court should dismiss the state law claims given that the federal claims fail. It is well settled that where federal claims, such as the wire fraud and RICO claims here, are eliminated in the early stages of litigation through dismissal, courts should generally decline to exercise pendent jurisdiction over remaining state law claims. Klein & Co. Futures v. Bd. of Trade of City of New York, 464 F.3d 255, 262 (2d Cir. 2006); Kolari v. New York–Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims") (internal citations omitted).

**IV.**     **Plaintiff's Claim for Conspiracy (Second Claim) Fails To State A Claim**

The Court should dismiss Plaintiff's conspiracy claim. New York does not recognize civil conspiracy to commit a tort as an independent cause of action. Dickinson v. Igoni, 76 A.D.3d 943, 945, 908 N.Y.S.2d 85, 88 (2d Dep't 2010); Payday Advance Plus, Inc. v. Findwhat.com, Inc., 478 F. Supp. 2d 496, 506 (S.D.N.Y. 2007). Accordingly, a claim alleging conspiracy to commit a tort stands or falls with the underlying tort. Williams v. Williams, 149 A.D.3d 1145, 1146, 53 N.Y.S.3d 152, 153 (2d Dep't 2017), leave to appeal denied, 30 N.Y.3d 913, 71 N.Y.S.3d 7 (2018).

Plaintiff's conspiracy cause of action cannot stand as pled in the Complaint, which pleads conspiracy as an independent cause of action. Further, such claim must fail because the underlying conduct upon which the conspiracy is based, i.e., the Defendants' alleged wire fraud and RICO violations, should be dismissed. Pappas v. Passias, 271 A.D.2d 420, 421, 707 N.Y.S.2d 178, 180 (2d Dep't 2000) (dismissing conspiracy to commit fraud cause of action since the fraud cause of action was already dismissed).

**V.**     **Plaintiff's Claim for Unfair Competition (Ninth Claim) Fails To State A Claim**

Under New York law, an unfair competition claim encompasses a broad range of unfair practices. Carson Optical, Inc. v. Prym Consumer USA, Inc., 11 F. Supp. 3d 317, 329 (E.D.N.Y. 2014). "[T]he essence of an unfair competition claim is that the defendant has misappropriated the labors and expenditures of another and has done so in bad faith." Coca–Cola North America v. Crawley Juice, Inc., 2011 WL 1882845, at *6 (E.D.N.Y. May 17, 2011) (internal quotation marks and citations omitted).

To sustain a claim for common law unfair competition, the plaintiff must show that the defendants misappropriated the plaintiffs' labors, skills, expenditures, or good will and displayed some element of bad faith in doing so. Abe's Rooms, Inc. v. Space Hunters, Inc., 38 A.D.3d 690, 692, 833 N.Y.S.2d 138, 140 (2d Dep't 2007). Moreover, "[n]ot every act, even if taken in bad faith,

constitutes unfair competition." To act in "bad faith," one must exploit some "commercial advantage which belonged exclusively to another." Carson Optical, 11 F. Supp. 3d at 329.

Plaintiff does not allege how any of the individual Defendants could be held liable for any alleged unfair competition. As to the entity DGL, which allegedly sold Plaintiff the purportedly offending product, Plaintiff does not allege that it misappropriated Plaintiff's labors, skills, expenditures, or good will or otherwise attempted to capitalize on the Plaintiff's name or reputation in the sale of Samsung Chargers. Thus, the ninth cause of action also should be dismissed. Id.

## VI. Plaintiff's Claim for Breach of New York General Business Law § 349 (Eight Claim) Fails to State A Claim

Section 349 of New York's General Business Law ("GBL") "'was designed to protect individual consumers from various forms of consumer fraud and deception. ExxonMobil Inter-Am., Inc. v. Advanced Info. Engin. Serv., Inc., 328 F. Supp. 2d 443, 449 (S.D.N.Y. 2004). The statute provides a private right of action to a person injured by a business's deceptive act or practice. Id. The elements of such a deceptive practices claim are (1) that the act or practice was directed to consumers, (2) that the act or practice was misleading in a material respect, and (3) that the plaintiff was injured. See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 532 (1995).

The paradigm § 349 case "involves an individual consumer who falls victim to misrepresentations made by a seller of consumer goods[,] usually by way of false and misleading advertising." Teller v. Bill Hayes, Ltd., 213 A.D.2d 141, 146, 630 N.Y.S.2d 769, 773 (2d Dep't 1995) (internal quotation marks omitted). And while corporate competitors have been said to have standing to bring § 349 claims, the statute is not a "sword to be wielded in business-versus-business disputes ... where the party asserting the claim is not acting in a consumer role." Spirit Locker, Inc. v. EVO Direct, LLC, 696 F. Supp. 2d 296, 301 (E.D.N.Y. 2010).

19

With § 349's purpose in mind, courts have consistently held that private transactions between sophisticated business parties do not give rise to liability under the statute. Id.; See also, Sutton Assocs. v. Lexis–Nexis, 196 Misc.2d 30, 31, 761 N.Y.S.2d 800, 802 (Sup. Ct Nassau Cnty. 2003) (dismissing a § 349 claim in the context of a commercial dispute).

Again, Plaintiff does not allege how any of the individual Defendants could be held liable for any alleged unfair competition.  As to the entity DGL, which allegedly sold Plaintiff the purportedly offending product, Plaintiff was not acting as a consumer, nor is it a competitor of DGL.  And the gravamen of the Complaint is not harm directed at consumers and/or suffered by consumers; instead, the Complaint focuses on alleged representations made only to LuxClub and damages allegedly suffered by LuxClub as distributor of products.  Plaintiff has not alleged any conduct undertaken by DGL, let alone any individual Defendant, directed at any consumer, nor has Plaintiff sufficiently alleged that Defendants engaged in any deceptive act or practice.   For these reasons, Plaintiff's deceptive business practices claim necessarily fails.

**VII.**   **Plaintiff's Claim For Non-Infringement (Seventh Claim) Fails To State A Claim**

Section 2-312(3) of the UCC provides: "unless otherwise agreed a seller who is a merchant regularly dealing in goods of the kind warrants that the goods shall be free of the rightful claim of any third person by way of infringement or the like…." U.C.C. § 2–312(3). Courts have interpreted § 2–312(3) to entitle the buyer of an infringing good to indemnification from the seller for any claims by a third party for infringement. Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp., 98 F. Supp. 2d 480, 489 (S.D.N.Y. 2000). To recover damages under § 2-312(3), "the plaintiff-buyer must show that the seller (1) was a merchant regularly dealing in goods of the kind; (2) the goods were subject to a rightful infringement claim of any third party upon delivery; (3) the buyer did not furnish specifications to the seller; and (4) the parties did not form another agreement." Stampede Presentation Prods., Inc. v. M&A Intern'l Inc., 2019 WL 690680, at *4 (W.D.N.Y. Jan.

4, 2019), report and recommendation adopted, 2019 WL 688409 (W.D.N.Y. Feb. 19, 2019); Innovation Ventures, LLC v. Ultimate One Distrib. Corp., 2016 WL 1274011, at *4 (E.D.N.Y. Mar. 31, 2016) (same).

The Complaint fails to allege a cause of action under § 2-312(3). Plaintiff has not pled any set of facts that would suggest the availability of a non-infringement claim against any individual Defendant. As to DGL, Plaintiff has not asserted facts to suggest that it regularly dealt in Samsung merchandise, let alone allegedly inauthentic Samsung merchandise. Moreover, there are no infringement claims against Plaintiff for which Plaintiff could seek indemnification from any Defendants. Quite to the contrary, Plaintiff has alleged that Samsung withdrew any complaint it had filed with Amazon against IncaDove. For the foregoing reasons, Plaintiff's claim under § 2-312(3) necessarily fails.

**VIII.  Plaintiff's Warranty Claims (Fourth, Fifth, And Sixth Claims) Fail To State A Claim**

In the Fourth and Sixth Claims set forth in the Complaint, Plaintiff purports to allege claims against all Defendants for breach of implied warranty (unspecified), and breach of implied warranty of fitness for a particular purpose. To the extent that Plaintiff seeks to plead claims for breach of the implied warranties of merchantability and fitness for a particular purpose, as recognized under New York law, such claims should be dismissed.

The warranty of merchantability is implied in every sale of goods, if the seller is a merchant with respect to goods of that kind, unless the warranty is excluded or otherwise modified. UCC § 2-314. To establish a claim for breach of the implied warranty of merchantability, a plaintiff must show that the product was not reasonably fit for its intended purpose, an inquiry that focuses on the expectations for the performance of the product when used in the customary, usual and reasonably foreseeable manners, and that the defect was a proximate cause of the plaintiff's injury. Wojcik v. Empire Forklift, Inc., 14 A.D.3d 63, 66, 783 N.Y.S.2d 698, 701 (3d Dep't 2004) (internal

21

quotation marks and citation omitted).  A warranty of fitness for a particular purpose is separately implied "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods" UCC § 2–315.   Finally, in the absence of privity, a breach of implied warranty claim must be dismissed as a matter of law.  Comsewogue Union Free Sch. Dist. v. Allied-Trent Roofing Sys., Inc., 272 A.D.2d 360, 361, 707 N.Y.S.2d 657, 658 (2d Dep't 2000); Gordon v. Ford Motor Co., 239 A.D.2d 156, 156, 657 N.Y.S.2d 43 (1st Dep't 1997).

First, both implied warranty claims necessarily fail as to the individual defendants.  None are "sellers" under the UCC; moreover, none are alleged to be in contractual privity with Plaintiff. Second, both implied warranty claims fail as to DGL as well.  As to merchantability, Plaintiff does not allege that the chargers, even if inauthentic, were unfit.  Plaintiff (i) alleges that it received a handful of complaints and negative product reviews; and (ii) suggests that while it has **no information** as to the issue, it is conceivable there **may** be safety issues with inauthentic chargers (Compl. ¶¶ 99, 100-104).  That is not enough.  As separately discussed, Plaintiff also has not alleged proximate cause between any alleged unfitness and its claimed damages.  Fitness of the product does not bear on a rights claim made by Samsung that allegedly resulted in the suspension of IncaDove from Amazon.  As to fitness for a particular purpose, Plaintiff does not allege, nor could it allege, that in making its purchases of electronic devices, it relied on any expertise on the part of DGL.  Plaintiff, by its own claims, was a long-time distributor of electronic consumer goods.  (Compl. ¶ 20).

Separately, Plaintiff alleges breach of express warranty.  In doing so, Plaintiff refers to unspecific emails, conversations and invoices in its business dealings with DGL.  To prove an express warranty claim, plaintiff must demonstrate the following: (i) the seller made an express

warranty about the product; (ii) plaintiff relied upon the seller's express warranty (i.e., the warranty formed part of the basis of the bargain); (iii) the product did not conform to the description in the express warranty; (iv) the breach of the express warranty caused the plaintiff's injury; and (v) damages. Schimmenti v. Ply Gem Industries, Inc., 156 A.D.2d 658, 659, 549 N.Y.S.2d 152, 154 (2d Dep't 1989); Horowitz v. Stryker Corp., 613 F. Supp. 2d 271, 286 (E.D.N.Y. 2009). Again, none of the individual Defendants is, or could be alleged to be, a seller against whom an express warranty claim can be pled. Additionally, Plaintiff does not identify the express terms of the warranty. Nor does plaintiff allege causation. Accordingly, the warranty claims should be dismissed as to not only the individual Defendants but DGL as well.

**IX.  To The Extent Plaintiff Seeks To Plead A Claim For Breach Of Contract, Such Claim Is Directed Solely Against DGL And The Individual Defendants Should Be Dismissed**

Finally, Plaintiff alleges within the body of the Complaint, but not as a separately pleaded count, that "Distributor" (i.e. DGL) breached contracts with Plaintiff. (Compl. ¶¶ 110-112). According to Plaintiff, its purchase orders are "valid, enforceable contracts" between LuxClub and DGL, LuxClub performed under the purchase orders, but DGL breached same by selling counterfeit product. (Id.). To the extent the foregoing allegation is considered to be a separate cause of action, the claim is pled against DGL alone. At minimum, the claim must be dismissed to the extent Plaintiff would allege it against the individual defendants. Moreover, even as to DGL, the claim should be dismissed to be pursued, if at all, in state court.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint in its entirety. To the extent that any state law claims have been adequately pleaded, they should be pursued, if at all, in state court.

Dated:  March 1, 2019                    Respectfully submitted,
        New York, New York

                                         By:  s/ David R. King
                                              David R. King, Esq.
                                              dking@herrick.com
                                              Herrick, Feinstein LLP
                                              2 Park Avenue
                                              New York, New York  10016-2301
                                              Tel. 212.592.5948

                                              *Attorneys for Defendants DGL Group Ltd.,*
                                              *Ezra Zaafarani, Mark Nakash, Victor*
                                              *Sardar and Elie Wahba*