**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

LUXCLUB, INC.

 Plaintiff,

**-against-**

DGL GROUP LTD.;
EZRA ZAAFARANI;
MARK NAKASH;
SOLOMON KOHL;
VICTOR SARDAR; and
ELIE WAHBA.

Defendants.

Case No. 18-cv-04741

---

### *PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS*

Respectfully submitted by,

 /s/ *Cory J. Rosenbaum,*_____
Cory Rosenbaum, Esq.
Rosenbaum Famularo, P.C.
*Counsel for Plaintiff*
100 W Park Ave, Suite 310
Long Beach, NY 11561
(212) 256-1109

**Contents**

I.    INTRODUCTION ............................................................................... 1

    A.    The Defendants' Roles. ....................................................... 2

    B.    Plaintiff Purchased Counterfeit Samsung Goods from Defendants. ............. 3

    C.    The Defendants' Actions. ..................................................... 3

    D.    Damages ....................................................................... 4

    E.    Nature of Fraud, Conspiracy and RICO Claims. ...................... 4

II.    APPLICABLE LAW ................................................................... 7

III.    PLAINTIFF'S COMPLAINT ALLEGES ENOUGH FACTS TO SUSTAIN A RICO ACTION. ..................................................................... 7

    A.    RICO Violation of 18 U.S.C. § 1962 ................................... 8

        1.    *FRAUD - THE COMPLAINT STATES CLAIMS AGAINST DEFENDANTS* ........... 8

        2.    *CONSPIRACY* ....................................................... 11

    B.    Damages Plaintiff Suffered Due To Fraud And Conspiracy ........ 13

    C.    Causation .................................................................... 13

IV.    THE COMPLAINT STATES SUBSTANTIVE RICO CLAIMS ............. 15

    A.    Defendants engaged in a pattern of racketeering activity. ........... 15

    B.    Defendants' Clearly Engaged in a RICO Enterprise .................. 17

    C.    Inexplicably, Defendants Ignore Portions Of The Complaint Explaining Defendants' Roles In The Rico Enterprise. ........... 19

V.    THE COMPLAINT STATES CLAIMS FOR VIOLATIONS OF NEW YORK LAW ....................................................................... 20

    A.    Warranty Allegations Relevant to All Warranty Claims ............ 20

        1.    *DGL is a Merchant* ............................................. 20

        2.    *The Counterfeit Goods were Authentic.* ..................... 21

    B.    Breach Of Express Warranty ............................................ 21

    C.    Breach Of Implied Warranty (Fourth Claim) & Breach Of The Implied Warranty Of Fitness For A Particular Purpose N.Y. U.C.C. Law § 2-314 (Sixth Claim) ............................................................... 22

        1.    *The Complaint States Sufficiently a Claim for Breach.* ......... 22

        2.    *Defendants' Arguments Fail to Prove Otherwise* ............ 24

D.    Breach Of The Warranty Of Non-Infringement Under N.Y. U.C.C. Law § 2-312 ...................................................................................................... 24

E.    New York Deceptive Business Practices New York General Business Law § 349 ................................................................................................................ 25

F.    Common Law Unfair Competition ................................................................ 25

    1.    *The Complaint States Sufficiently Unfair Competition Through Palming Off* ......... 26

    2.    *Defendants' Argument Fails Because They Failed to Address Palming Off.* .......... 26

**VI.    MOTION FOR LEAVE TO AMEND COMPLAINT** ................................................. 26

**VII.    CONCLUSION** ........................................................................................................ 26

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ........................ 7

*Boyle v. United States*, 556 U.S. 938, 948, 129 S. Ct. 2237, 173 L. Ed. 2d 1265 (2009)) ..... 17, 19

*Caronia v. Philip Morris United States, Inc.*, 715 F.3d 417, 433 (2d Cir. 2013). ................. 20, 22

*Cedric Kushner Promotions, Ltd. v. King,* 533 U.S. 158, 121 S. Ct. 2087, 150 L.Ed.2d 198 (2001)........................................................................................................................... 17, 18

*Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260, 1267 (S.D.N.Y. 1991) ..... 12

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999)) ............... 16

*Daley v. McNeil Consumer Prods. Co.*, 164 F. Supp. 367, 377 (S.D.N.Y. 2001).................... 22

*De Sole et al v. Knoedler Gallery, LLC et al.* 974 F. Supp. 2d 274 (S.D.N.Y. 2013) ........... 16, 19

*De Sole v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 387 (S.D.N.Y. 2015) .......................... passim

*Electrolux Corp. v Val-Worth, Inc.*, 6 NY2d 556, 567-568, 161 NE2d 197, 190 NYS2d 977 [1959]........................................................................................................................... 25

*Equinox Gallery Ltd. v. Dorfman*, 306 F. Supp. 3d 560, 570 (S.D.N.Y. 2018) .................... 17, 19

*Fagan v. AmerisourceBergen Corp.*, 356 F. Supp. 2d 198, 215-16 (E.D.N.Y. 2004)................. 22

*Fertitta v. Knoedler Gallery, LLC*, No. 14 Civ. 2259 (JPO), 2015 U.S. Dist. LEXIS 10419, 2015 WL 374968, at *6 (S.D.N.Y. Jan. 29, 2015). ........................................................... 12

*First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 176 (2d Cir. 2004). ...................... 2

*Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F. Supp. 2d 439 (E.D.N.Y. 2007)............... 25

*H. J. Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 242, 109 S. Ct. 2893, 2902, 106 L.Ed.2d 195, 209 (1989)) .............................................................................................................. 15

*Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268, 112 S. Ct. 1311, 117 L. Ed. 2d 532 (1992)........................................................................................................................... 14

*Ideal Steel Supply Corp. v. Anza*, 652 F.3d 310, 323 (2d Cir. 2011)). ....................................... 13

*In re Sumitomo Copper Litig.*, 120 F. Supp. 2d 328, 339 (S.D.N.Y. 2000) ................................ 12

*Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, No. 12-CV-5354 (KAM) (RLM), 2016 U.S. Dist. LEXIS 44496, at *43-45 (E.D.N.Y. Mar. 31, 2016 ...................................... 24

*ITC Ltd. v. Punchgini, Inc.*, 2007 NY Slip Op 9813, ¶ 6, 9 N.Y.3d 467, 476-77, 850 N.Y.S.2d 366, 372, 880 N.E.2d 852, 858 ....................................................................... 25, 26

*Kashi v. Gratsos*, 790 F.2d 1050, 1055 (2d Cir. 1986) ......................................................... 12

*Kraft v. Staten Island Boat Sales, Inc.*, 715 F. Supp. 2d 464, 473 (S.D.N.Y. 2010) .................. 22

*Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 283 (2d Cir. 2006) ............................................ 8

*Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983) ............................................ 15

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339 (2d Cir. 1994). .. 18

*Salinas v. United States*, 522 U.S. 52, 64, 118 S. Ct. 469, 139 L. Ed. 2d 352 (1997) ................. 11

*Saratoga Spa & Bath, Inc. v. Beeche Systems Corp.*, 230 A.D.2d 326, 330, 656 N.Y.S.2d 787, 789 (3d Dep't 1997) ...................................................................................................... 22

*Schoenholtz v. Doniger*, No. 83 Civ. 2740 (IBC), 1984 U.S. Dist. LEXIS 16980, at *20 (S.D.N.Y. May 4, 1984) .............................................................................................. 6

*Skinner v. Switzer*, 562 U.S. 521, 530 (2011). ...................................................................... 7

*United States v. Persico*, 832 F.2d 705, 713 (2d Cir. 1987)) .............................................. 11

*United States v. Pizzonia*, 577 F.3d 455 (2d Cir. 2009) ...................................................... 11

*United States v. Zichettello*, 208 F.3d 72, 99 (2d Cir. 2000) .............................................. 11

**Statutes**

18 U.S.C. § 1961 .................................................................................................... 15, 17

18 U.S.C. § 1962 .............................................................................................. 8, 11, 17

N.Y. U.C.C. Law § 2-312 .......................................................................................... 24

N.Y. U.C.C. Law § 2-313 .......................................................................................... 22

N.Y. U.C.C. Law § 2-314 .......................................................................................... 20

New York General Business Law § 349 ........................................................................ 25

New York General Business Law § 350 ........................................................................ 25

**Treatises**

Gilson on Trademarks § 5.09 (2018) ........................................................................... 26

iv

Wright & Miller, 5 Federal Practice and Procedure § 1357 (1969)). ............................................. 7

## I. INTRODUCTION

This case seeks relief from Defendants' knowing sale to Plaintiff of counterfeit goods in excess of a half a million dollars *wholesale*, which amounts to three times or more in *retail* dollars.[1] Plaintiff LuxClub is owned and operated by a mother, Mrs. Margaret Mosseri, in New York. In July 2014, her husband, Abraham Mosseri, stepped down from a high-paying position with another company to join LuxClub and sell online with his wife. Compl., ¶ 20. With Mr. Mosseri's background in electronics, LuxClub changed its focus to selling consumer electronics and began adding many new products acquired through distributors. Compl., ¶ 20. LuxClub enjoyed great success until it became the victim of Defendants' violations. Compl., ¶ 20. To recover damages for such fraud and counterfeiting, Plaintiff filed this lawsuit.

Even though the Complaint pleads detailed violations, Defendants seek to dismiss it in its entirety for failure to state a claim. In doing so, Defendants rely -unsuccessfully - upon two ongoing themes: counterfeiting is not a serious enough offense to fall under RICO's ambit; and Defendants rely upon disputed facts to argue its points.

Concerning the former, Defendants have failed to present a single case that stands for the proposition that *de minimus* counterfeiting cannot serve as an underlying RICO crime. Moreover, Defendants downplay their violations by attempting to characterize this case as a straightforward breach of contract. *See* Motion, p. 12 ("Plaintiff's claims sound in breach of contract"). Defendants also downplay the gravity of their actions when they ask the Court to

---

[1] *Compare* Compl., Ex. 3 (SAM- EP-TA20JWE - $4.50) *with* EP-TA20JWEUSTA Adaptive Fast Charging Wall Charger *available at* https://www.samsung.com/us/mobile/mobile-accessories/phones/adaptive-fast-charging-wall-charger-detachable-microusb-usb-cable-white-ep-ta20jweusta/ (last visited Mar. 29, 2019) ($14.99).

dismiss this case because of its "stigmatizing effect." Motion, p. 6. Rather, many RICO cases as well as criminal cases involving RICO center upon counterfeiting activity.

And, concerning the latter, relying upon disputed facts in a motion to dismiss for failure to state a claim, is fatal to their motion. Plaintiff is not required at the pleading stage to present evidence; however, Defendants argue that such *evidence* is missing in the Complaint. *See* Motion, p. 14 (citing a lack of evidence concerning open-ended continuity).

### A. The Defendants' Roles.

At a high level, Defendants sold counterfeit goods to Plaintiff to their monetary benefit and its damage. Focusing on each Defendants' role, Defendant DGL (Distributor) is a corporation that individually-named Defendants used to make, and benefit from, counterfeit consumer electronic equipment sales. Compl., ¶¶ 2, 8. Defendants Zaafarani, CEO and chairman, Nakash, Vice President, and Defendant Sardar, partner, likely created policy to market in counterfeit goods. Compl., ¶¶ 3, 4, 6. Zaafarani and Nakash made every major decision for DGL and would, at a minimum, know and acquiesce to dealing in counterfeit goods and more likely, be the ones directing such schemes. Compl., ¶¶ 54-56.

Defendant Kohl, as the accountant, ensured that the counterfeit sales would continue unnoticed to those outside the individually-named Defendants. Compl., ¶ 5. Finally, Defendant Wahba knowingly traded counterfeit goods. Compl., ¶ 7. With these allegations, Plaintiff cleared the "low hurdle" to show that "each defendant participated in the operation or management of the enterprise itself." *First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 176 (2d Cir. 2004).

All Defendants know where the counterfeit goods originated from – whether they were ordered or manufactured by Defendants. But Defendants refused to share this knowledge or evidence of such knowledge with Plaintiff. Compl., ¶ 51.

**B. Plaintiff Purchased Counterfeit Samsung Goods from Defendants.**

The aforementioned persons facilitated Plaintiff's purchase of black and white counterfeit wireless Samsung chargers. Compl., ¶¶ 36 41; 105-109.  The white ones were identified by SKU SAM-EP-PG920IBKG and by name Samsung EP-PG920I Wireless Charger Pad for Samsung Galaxy S6 – Black. Compl., ¶¶ 37, 38 (shown below).  The black had a SKU of SAM-EP-PG920IWEGWW and was named Samsung EP-PG920I Wireless Charger Pad for Samsung Galaxy S6 – White. Compl., ¶¶ 39, 40 (shown below).



Authentic Samsung Chargers – not the ones in this case - are supposed to have three colored lights and flash each color when plugged in.  Compl., ¶ 94.  The different color lights represent different statuses such as charging and fully charged. Compl., ¶ 94.

The counterfeit Samsung Chargers, purchased from Distributor, do not have three light colors. Compl., ¶ 95. Rather, they only have a single color when used and do not change during different charging statuses. Compl., ¶ 95. The counterfeit Samsung Chargers sometimes get extremely hot when used. ¶ 96. The counterfeit Samsung Chargers do not work consistently with charging and their functions are intermittent. Compl., ¶ 97.

**C. The Defendants' Actions.**

The Complaint specifically pleads the roles of DGL and each individual Defendant in the counterfeiting scheme.  Defendant Wahba was Plaintiff's introduction to DGL. Compl., ¶ 23.

Defendants first offering through Wahba was "'authentic' Samsung products." Compl., ¶ 23. Due to delays, many of Plaintiff's ordering occurring through Wahba through telephone. Compl., ¶¶ 25, 26. However, others occurred via email. Compl., ¶ 26.

Although others accompanied him, Wahba served as Plaintiff's direct contact. Compl., ¶ 27 (sales, delivery, service). Though, when a significant issue arose – one that often involved money – either Sardar or Nakash would address the elevated concerns. Compl., ¶ 27. While they were often unavailable, Plaintiff did specifically communicate with Nakash concerning the counterfeit wireless charging pads. Compl., ¶¶ 29, 30. Additionally, as expected, Plaintiff communicated with Kohl concerning accounting discrepancies. Compl., ¶ 31.

### D. Damages

The Complaint's claims require damages allegations to sustain them. Thus, from the outset, Plaintiff identifies the following damages allegations:

- Plaintiff paid a monetary settlement to Samsung for selling counterfeit goods. Compl., ¶ 116.

- Plaintiff was unable to sell its entire Samsung counterfeit purchase from Defendants. Compl., ¶¶ INTRODUCTION, 22, 45, 81, 82, 113, 116.

- Plaintiff lost all ability to sell – even product unrelated to the counterfeit goods – for nearly a year. Compl., ¶ 117.

- Plaintiff lost all favorable privileges due to selling Defendants' counterfeit goods. Compl., ¶ 118.

- Plaintiff did not receive the benefit of its contract with DGL. Compl., ¶¶ 110-112.

### E. Nature of Fraud, Conspiracy and RICO Claims.

As a preliminary issue, conspiracies by their very nature are shrouded in secrecy. To maintain their secrecy, Defendants' verbal agreement or ongoing understanding would not be available to Plaintiff. Additionally, circumstantial evidence, such as how much and from whom Defendants purchased the counterfeit goods from are not available to Plaintiff before discovery.

This is why many of the cases, including those relied upon by Defendants, deciding a motion to dismiss actually moved to dismiss amended complaints filed after discovery. *See, e.g.,* Motion, p. 9, 10, 16 (*De Sole v. Knoedler Gallery, LLC*, 974 F. Supp. 2d 274 (S.D.N.Y. 2013))(considering motion to dismiss amended complaint).

Nonetheless, Defendants' actions are irregular and suspicious; thus, when combined with the fact that they sold counterfeit goods, produce a reasonable inference that their conduct was illegal and intentional, they knew their conduct was illegal, and they sought to mask evidence of such crimes.

For instance, rather than receiving shipment directly from Defendants, Plaintiff would take direct delivery of the imported counterfeit goods. Compl., ¶ 26. Conveniently, Wahba failed to produce "appropriate delivery documents," which resulted in "delivery errors." Compl., ¶ 28. Plaintiff never determined whether the absence of these documents were because they never existed or because Defendants ran a sloppy operation. Defendants never told Plaintiff.

As another example, many counterfeit goods "arrived in damaged packaging." Compl., ¶¶ 29, 45. Defendants never used the word "Samsung" on any invoices. Compl., ¶¶ 45. In later emails, Defendants switched to using short-hand notation instead. Compl., ¶¶ 45. For example, rather than writing "Samsung Wireless Charging Pad" Defendants would simply write "Wireless Pad" or "Pad." ¶ 45. Additionally, sometimes Defendants would refer to an item by its model number or the unique part of its model number such as "TA20" to stand in for "Samsung EP-TA20JWE." ¶ 45.

Consequently, for apparent reasons, Defendants often take affirmative steps "to prevent discovery of the fraud scheme." *De Sole v. Knoedler Gallery, LLC,* 137 F. Supp. 3d 387, 426

(S.D.N.Y. 2015).   Put another way, Defendants did not publish a playbook on how they would operate their criminal actions.

Instead, they refused to provide a letter of authenticity. Compl., ¶ 48.  They refused to explain the nature of their sales. Compl., ¶ 50 ("[A]s you know we are NOT authorized distributors and you knew the goods are authentic but gray market.").  They refused to make any representation to Amazon after Plaintiff was faced with counterfeit claims for goods Defendants sold it. Compl., ¶ 51.

Circling back to cited cases, circumstantial evidence gained through discovery will further support a wrongdoing inference.  For example, should discovery reveal that Defendants purchased their counterfeit goods from an entity in an Eastern country that is not authorized to manufacture or distribute those products, it will support that Defendants knew the goods were counterfeit.  Or, if they purchased the goods for less than a dollar per unit, it will demonstrate knowledge.

As another example, if Defendants sold the same products for years, or are continuing to sell them, it will prove RICO's continuity element.  Similarly, if DGL's customers had complaints that the goods purchased from it were counterfeit, it will prove continuity and support Plaintiff's claims of intent and knowledge.

And, another would include documents such as emails and transaction documents further illuminating how Defendants intended and actually concealed their scheme's true nature.

Paramount to and because of the foregoing, and "[s]ince the policy of the federal rules is to determine actions on their merits, motions to dismiss for failure to state a claim are disfavored and rarely granted." *Schoenholtz v. Doniger*, No. 83 Civ. 2740 (IBC), 1984 U.S. Dist. LEXIS 16980, at \*20 (S.D.N.Y. May 4, 1984) (citing Wright & Miller, 5 Federal Practice and

Procedure § 1357 (1969)).  Here, Plaintiff's claims state claims, which are made plausible by it well-pleaded allegations in the Complaint.  The Court should deny the Motion and order the parties to proceed with litigation.

## II.   APPLICABLE LAW

Plaintiff's Complaint should be upheld because it contains "'sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *De Sole v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 387, 401 (S.D.N.Y. 2015)(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  In doing so, the Court should both accept all allegations in the Complaint as true and "draw all reasonable inferences in favor of the plaintiff." *De Sole v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 387, 401 (S.D.N.Y. 2015)(citations omitted).

Rule 8 "generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011). The Complaint surpasses this standard and provides Defendants with "fair notice of what the claim is and the grounds upon which it rests." *De Sole v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 387, 401 (S.D.N.Y. 2015)(citations omitted).  The law requires no more, and Defendants' Motion should be denied.

## III.   PLAINTIFF'S COMPLAINT ALLEGES ENOUGH FACTS TO SUSTAIN A RICO ACTION.

Plaintiff adequately pleads its RICO claims in the Complaint because it alleges facts 1) explaining Defendants wire fraud and conspiracy; 2) outlining its injury due to the fraud and conspiracy; and 3) connecting Defendants violations to plaintiff's injury.  *De Sole v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 387, 401-02 (S.D.N.Y. 2015)  (quoting *Lerner v. Fleet Bank,*

*N.A.*, 459 F.3d 273, 283 (2d Cir. 2006))(RICO plaintiff "must allege: '(1) the defendant's violation of 18 U.S.C. § 1962, (2) an injury to the plaintiff's business or property, and (3) causation of the injury by the defendant's violation.'").

### A. RICO Violation of 18 U.S.C. § 1962

#### *1. FRAUD - THE COMPLAINT STATES CLAIMS AGAINST DEFENDANTS*

Plaintiff agrees with Defendants' five elements of fraud recitation: 1. A schedule to defraud, which is broken into three elements: 1.a. existed of a defraud scheme, 1.b. Defendants' intent to defraud, and 1.c. materiality of the misrepresentations; 2. To get money; and 3. Using interstate mails and wires. *De Sole v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 387, 408 (S.D.N.Y. 2015); Motion, p. 11 (citations omitted).

However, Plaintiff disagrees with Defendants' argument that the Complaint lacks particularized allegations of the same. Hence, their efforts to dismiss the RICO claims fail to meet their burden in bring the Motion.

#### a. <u>the existence of a scheme to defraud</u>

Defendants' scheme was to sell counterfeit chargers so that Plaintiff paid too much, and they profited. Compl., ¶ 43. Defendants either made, had made, or purchased Samsung Chargers that were counterfeit. Compl., ¶ 91. Defendants had carefully and faithfully reproduced the Samsung Chargers to include dimension, materials, look, and function. Compl., ¶ 92. Moreover, the chargers' packaging appeared authentic. Compl., ¶ 92. Indeed, since the counterfeit chargers were indistinguishable from authentic chargers, Samsung itself was the first to identify them as counterfeit. Compl., ¶ 92. The packaging's authentic appearance effectively prevented Plaintiff LuxClub from being able to discover any breach of contract by Defendants. Compl., ¶ 92.

This lawsuit centers around a company knowingly committing fraud and padding their profit margin by selling counterfeit goods resulting in significant detriment to its victims who resold

the counterfeit goods on the Amazon.com selling platform. Although Defendants inject a motive requirement and argue that its missing from the Complaint, Plaintiff's theory throughout its Complaint is simple and is summed up in one word – greed. Motion, p. 13. Defendants were actively engaged in manufacturing, distributing, selling, promoting, or attempting to pass off counterfeit wireless charging pads as authentic Samsung products. Compl., ¶ INTRO. They did this out of greed so that they could steal more money.

Defendants made representations that the counterfeit goods were authentic. Compl., ¶¶ 44-46. Although a plaintiff may make general scienter allegations, he must allege "'facts that give rise to a strong inference of fraudulent intent.'" *De Sole v. Knoedler Gallery, LLC*, 974 F. Supp. 2d 274, 313 (S.D.N.Y. 2013) (citations omitted). Sure, Defendants did not admit that they had the intent to sell counterfeit goods. But their evasive measures when referring to the counterfeit goods strongly infer their knowledge and intent.

Ultimately, Plaintiff did not receive authentic chargers. Compl., ¶ 47.

### b. the Defendants' knowing participation in the scheme, and

Defendants employed tactics to conceal their scheme. While the Complaint provides fair notice and allegations supporting reasonable inferences to intent, Defendants urge the Court to dismiss the RICO claims because the Complaint does not include an executed business plan and written agreement memorializing the Defendants' "meeting of the minds." Motion, p. 17.

At this juncture, Plaintiff alleges that Zaafarani and Nakash made every major decision for DGL and would at a minimum know and acquiesce to dealing in counterfeit goods and more likely, be the ones directing such schemes. Compl., ¶¶ 54-56. For instance, they would know – and probably hired Wahba because – of his dealings in counterfeit goods. His brother's company, Mobil Star, "is the defendant in numerous lawsuits alleging the sale of counterfeit goods" of consumer mobile electronics, notably including chargers. Compl., ¶ 90.

Defendants knew that the chargers were counterfeit because they did not receive them from Samsung or an authorized Samsung distributor. Defendants admit this. Compl., ¶ 50 ("we are NOT authorized distributors). Additionally, because of the presumably low price, which will be determined during discovery, Defendants had reason to know that their Samsung products were counterfeit.

For instance, after Plaintiff discovered the counterfeit goods, it requested a letter of authenticity from Distributor concerning the counterfeit Samsung Chargers, and Defendants refused to provide such a letter. Compl., ¶ 15. Even Defendants' supplied documentation, such as invoices, demonstrate that they intended to conceal the nature of their scheme when Amazon denied them. Compl., ¶ 49.

Furthermore, although Sardar's communication doesn't prove the goods were counterfeit, it does support the allegation that he knew of the scheme that Plaintiff contends is counterfeit. That communication was sent in response to Plaintiff's counterfeit inquires - "[A]s you know we are NOT authorized distributors and you knew the goods are authentic but gray market." Compl., ¶ 50. As an aside, the Complaint **does not** allege ordinary trademark infringement by selling gray market goods. Indeed, Samsung's litigation counsel filed a **counterfeit** report. Compl., ¶¶ 88, 105.

In fact, at one point, Plaintiff "went so far as to visit DGL's offices in New Jersey to verify it was a legitimate business capable of providing the required products." Compl., ¶ 53. As it turns out, it wasn't.

### c. the use of . . . mail . . . communications in interstate commerce in furtherance of the scheme.

Defendants do not contest that they used emails and other communications forms. Defendants used the Internet to operate Distributor's website. http://www.dglusa.com/ (last

visited October 18, 2017). Compl., ¶ 24.  Typically, to place an order, LuxClub would either speak to Wahba on the phone about an order, send Wahba an email regarding an order, or send Wahba a purchase order (*"Purchase Orders"*). Compl., ¶ 26.  Additionally, Sardar and Nakash used email as their primary communications mode to contact Plaintiff. Compl., ¶¶ 29-30, 33. Kohl telephoned Plaintiff. Compl., ¶ 31.

These factual allegations are sufficient to meet the pleading requirements for fraud.

### 2.  CONSPIRACY

Plaintiff's Complaint states a claim for conspiracy (Complaint, second claim) and one for conspiracy to commit RICO (Complaint, ¶ 134).

> Section 1962(d)  prohibits any person from conspiring to violate any of the substantive provisions of subsections § 1962(a)-(c). A plaintiff bringing a RICO conspiracy claim must demonstrate that the defendant agreed to participate "'in a charged enterprise's affairs' through a pattern of racketeering, 'not a conspiracy to commit predicate acts.'" *United States v. Pizzonia*, 577 F.3d 455, 463 (2d Cir. 2009) (quoting *United States v. Persico*, 832 F.2d 705, 713 (2d Cir. 1987)). The *Reves* "operation or management" test, however, does not apply to RICO conspiracy. *Id*. at 462 n.4. "Assuming that a RICO enterprise exists, [one] must prove only that the defendant[] . . . know[s] the general nature of the conspiracy and that the conspiracy extends beyond [his] individual role[]." *United States v. Zichettello*, 208 F.3d 72, 99 (2d Cir. 2000) (internal quotation marks and citations omitted); *see also Salinas v. United States*, 522 U.S. 52, 64, 118 S. Ct. 469, 139 L. Ed. 2d 352 (1997) ("A person . . . may be liable for [RICO] conspiracy even though he was incapable of committing the substantive offense."); *United States v. Yannotti*, 541 F.3d 112, 122 (2d Cir. 2008) ("[D]efendant need only know of, and agree to, the general criminal objective of a jointly undertaken scheme.").

*De Sole v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 387, 409 (S.D.N.Y. 2015).

> A plaintiff bringing a RICO conspiracy claim is not required to demonstrate that the defendant agreed to commit any predicate act, however. Instead, plaintiff need only plead facts demonstrating that the defendant agreed to join an enterprise with knowledge that predicate acts would be committed by some member of the enterprise. *See Pizzonia*, 577 F.3d at 463; *see also Fertitta v. Knoedler Gallery, LLC*, No. 14 Civ. 2259 (JPO), 2015 U.S. Dist. LEXIS 10419, 2015 WL 374968, at *6 (S.D.N.Y. Jan. 29, 2015).

*De Sole v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 387, 409 (S.D.N.Y. 2015).

> "To make a prima facie factual showing of a conspiracy, 'a plaintiff must allege the primary tort[ — here, fraud — ]and four elements: (a) a corrupt agreement between two or more persons, (b) an overt act in furtherance of the agreement, (c) the parties' intentional participation in the furtherance of a plan or purpose, and (d) the resulting damage or injury.'" *In re Sumitomo Copper Litig.*, 120 F. Supp. 2d 328, 339 (S.D.N.Y. 2000) (quoting *Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260, 1267 (S.D.N.Y. 1991); *see also Kashi v. Gratsos*, 790 F.2d 1050, 1055 (2d Cir. 1986).

*De Sole v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 387, 414 (S.D.N.Y. 2015).

RICO conspiracy does not require Defendants their selves "commit or agree to commit the two or more predicate acts requisite to the underlying offense." *Salinas v. United States*, 522 U.S. 52, 65-66 (1997).

### d.  a corrupt agreement between two or more persons,

Defendants agreed to purchase counterfeit goods that were cheaper than authentic goods. Then, they agreed to sell them as authentic goods so that they would earn more money. Zaafarani and Nakash made every major decision for DGL and would at a minimum know and acquiesce to dealing in counterfeit goods and more likely, be the ones directing such schemes. Compl., ¶¶ 54-56.

### e.  an overt act in furtherance of the agreement,

Zaafarani and Nakash directed one or more employees of Distributor to procure, manufacture, or sell counterfeit Samsung Chargers, and this actually occurred. Compl., ¶¶ 57, 59. Defendants did actually purchase counterfeit goods. ¶ 59. Defendants then sold them as authentic to Plaintiff. ¶ 60.

### f.  the parties' intentional participation in the furtherance of a plan or purpose, and

Throughout their conduct, and as explained above, Defendants acted to deflect any attention garnered to whether the goods they sold were authentic.

### g. the resulting damage or injury.

Plaintiff was unable to sell its remaining inventory of counterfeit goods once Samsung filed an Amazon infringement report.

### h. Defendants' Argument Fails

Defendants attack both conspiracy claims in two different sections. In ¶ IV, Defendants argue that the Complaint's Second Claim fails to state a claim because New York does not recognize conspiracy as an independent cause of action. Motion, p. 18. Further, they argue that since Plaintiff's fraud allegations are insufficient, so too is the complaint's conspiracy claim. Motion, p. 18.

After making the general argument that RICO conspiracy is inadequately pleaded, Defendants specifically argument that there was no "meeting of the minds to commit predicate RICO acts" other than those of Zaafarani and Nakash. Motion, p. 16-17. This is untrue as a "meeting of the minds" can and should be inferred from their conduct.

### B. Damages Plaintiff Suffered Due To Fraud And Conspiracy

As explained above in § I.D., Plaintiff has pleaded "facts sufficient to demonstrate that plaintiff suffered an injury and that the plaintiff's injury was caused by the defendant's racketeering activities." *De Sole v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 387, 401-03 (S.D.N.Y. 2015) (quoting *Ideal Steel Supply Corp. v. Anza*, 652 F.3d 310, 323 (2d Cir. 2011)).

### C. Causation

Finally, the Complaint explains adequately how Defendants' wire fraud and conspiracy resulted in Plaintiff's suffered damages. Plaintiff would have not suffered such damages but for Defendants' offenses, and by selling counterfeit goods, Defendants should have foreseen the direct link between their actions and Plaintiff's damages for selling counterfeit goods. *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268, 112 S. Ct. 1311, 117 L. Ed. 2d 532 (1992)

(requiring "not only was a 'but for' cause of his injury, but was the proximate cause as well."). Hence, the Complaint properly pleads causation and Defendants' argument lacks merit.

In response, Defendants divide their causation arguments between but for causation and proximate cause. Motion, ¶ I. (but for); ¶ II.D. (proximate cause).

Concerning but for causation, Defendants make a bald assertion that the Complaint lacks any facts concerning their wire fraud and conspiracy. Motion, p. 5. Then, Defendants rely upon whether they had knowledge of the counterfeit goods, which is a disputed fact that's not appropriate for a 12(b)6 motion. Motion, p. 5 ("DGL did not know of the inauthenticity either.").

Concerning proximate cause, Defendants admit that the complaint adequately states a case; however, they argue that the harm is not direct. Motion, p. 15 (citing sections of the Complaint). Defendants arguments suffer two fatal flaws.

First, they argue that to properly state a case for proximate cause, Plaintiff must prove that their fraud in counterfeiting directly caused Plaintiff LuxClub to be suspended for a year. Motion, p. 15-16. At this stage, Plaintiff's Complaint must allege enough facts to make Plaintiff's claim plausible, not that Plaintiff must perfect its case. Therefore, what Defendants are missing is that Plaintiff was suspended off of Amazon and had returns due to Defendants' actions. Their argument that Samsung withdrew its Complaint and Amazon didn't believe the account was suspended has no relevance on the fact that their actions caused the damages.

Second, and equally irrelevant, Defendants argue that the Amazon consumers purchasing counterfeit Samsung goods would be better suited as Plaintiff's. This argument lacks merit because whether other parties may sue Defendants, it is not a bar to Plaintiff's claims. Moreover, Defendants failed to file a 12(b)1 motion for lack of standing.

## IV.  THE COMPLAINT STATES SUBSTANTIVE RICO CLAIMS

Plaintiff's complaint alleges "'(1) that the defendant[s] (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce.'" *De Sole v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 387, 401 (S.D.N.Y. 2015) (quoting *Moss v. Morgan Stanley, Inc*., 719 F.2d 5, 17 (2d Cir. 1983)).

### A.  Defendants engaged in a pattern of racketeering activity.

"The 'pattern of racketeering activity' elements are adequately pled where the plaintiff makes factual allegations sufficient to demonstrate that the defendants committed two or more predicate acts as part of a pattern of racketeering activity." *De Sole v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 387, 401-03 (S.D.N.Y. 2015).

Here, Plaintiffs allege that Defendants committed two or more acts of mail and wire fraud; mail and wire fraud are included in the statutory definition of "racketeering activity." *De Sole v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 387, 401-03 (S.D.N.Y. 2015) (citing 18 U.S.C. § 1961(1)(B).  The Complaint alleges both open-ended and closed-ended continuity.

Concerning the former, Plaintiff seeks injunctive relief to prevent "continuing criminal activity 'extending indefinitely into the future.'" *See* Compl. INTRODUCTION; *see also De Sole v. Knoedler Gallery*, *LLC*, 974 F. Supp. 2d 274, 306 (S.D.N.Y. 2013) (citing *H. J. Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 242, 109 S. Ct. 2893, 2902, 106 L.Ed.2d 195, 209 (1989)). Defendants' RICO scheme relates directly to the enterprise's daily operation – selling electronics.

Defendants' argument is simply downplays the seriousness of their actions - that counterfeiting is not of a nature that threatens continued activity.  Motion, p. 15.  With a

profitable scheme such as selling counterfeit goods, "the alleged enterprise is engaged in 'inherently unlawful' acts, and there is a threat of continuing criminal activity, open-ended continuity exists." *De Sole v. Knoedler Gallery, LLC,* 974 F. Supp. 2d 274, 306 (S.D.N.Y. 2013) (citing *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999)).

Concerning the latter, Plaintiff also alleged that Defendants' criminal activity has spanned over a period of two years; thus, meeting closed-ended continuity. *De Sole v. Knoedler Gallery, LLC*, 974 F. Supp. 2d 274, 306 (S.D.N.Y. 2013). That is, Defendants overlook their prior conduct in misconduct and focuses solely on the criminal actions taken against Plaintiff. Motion, p. 13-14 ("September through November 2015"). As an aside, Defendants' three-month window is wrong because Plaintiff ordered counterfeit goods from "September 3, 2015 to September 28, 2016" – a period of over a year. Compl., ¶ 32.

Turning to Defendants' argument, for example, the Complaint alleges that Defendants sold low-quality goods to Mobile Star. Compl., ¶ 22. In fact, they had 40 complaints within the last three years. Compl., ¶ 22 (citing https://www.bbb.org/new-jersey/business-reviews/electronic-equipment-and-supplies-wholesale-and-manufacturers/dgl-group-in-edison-nj-90137947/reviews-and-complaints (last visited Mar. 27, 2019). Additionally, the Complaint cites a Ripoff Report® where Defendants sell knowingly defective products. Compl., ¶ 22 (citing http://www.ripoffreport.com/reports/relevant/dgl-usa[2] (last visited Oct. 18, 2017).

For instance, they would know – and probably hired Wahba because – of his dealings in counterfeit goods. His brother's company, Mobil Star, "is the defendant in numerous lawsuits

---

[2] Note – as of March 27, 2019, this URL no longer exists. *De Sole v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 387, 401 (S.D.N.Y. 2013)("[w]here a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint.").

alleging the sale of counterfeit goods" of consumer mobile electronics, notably including

chargers. Compl., ¶ 90. Defendants, or business entities that they have sold to, have been sued

for selling other counterfeit, inauthentic, or defective goods to other resellers. Compl., ¶ 89.

Federal investigators have seized goods from Defendants. Compl., ¶ 89.

### B. Defendants' Clearly Engaged in a RICO Enterprise

For this element, Defendants argue not that the Complaint failed to identify a RICO

enterprise, rather, that the complaint lacks a *cognizable* RICO enterprise. Here, the RICO

enterprise is DGL - in other words, a "group of individuals associated in fact although

not a legal entity." 18 U.S.C. § 1961(4). The DGL enterprise is separate and distinct from

officers, employees, and contractors. *Equinox Gallery Ltd. v. Dorfman*, 306 F. Supp. 3d 560,

570 (S.D.N.Y. 2018) (explaining that "enterprise" includes various legal entities). According to

the Supreme Court, DGL, as "an association-in-fact enterprise is simply a continuing unit that

functions with a common purpose," satisfies this requirement. *Boyle v. United States*, 556 U.S.

938, 948, 129 S. Ct. 2237, 173 L. Ed. 2d 1265 (2009)).

Whereas the "persons" are the individual named Defendants in this case because they "are

'employed by or associated with' the 'enterprise.'" *Cedric Kushner Promotions, Ltd. v. King*,

533 U.S. 158, 161, 121 S. Ct. 2087, 2090, 150 L.Ed.2d 198, 203 (2001)(quoting § 1962(c)) .

Defendant's first argument, that the Complaint fails to meet the distinctness requirement is

factually incorrect and relies upon case law with facts distinct from this case. As explained

above, the Complaint separates the RICO enterprise from the persons. In fact, DGL may have

not even employed Defendant Kohl, which is evidenced by the other Defendants' counsel not

representing him. *See generally*, Motion.

Concerning case law, Defendants' citation to *Riverwoods* is factually distinct from our case.

Motion, p. 8 (citing *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339

(2d Cir. 1994)_. Unlike the present case, the business entity in *Riverwoods* was the RICO

person as opposed to the individually named Defendants that are RICO persons here. Motion, p.

8. Additionally, in *Riverwoods*, the RICO enterprise included the business entity again and its

employees and agents. Motion, p. 8.

In fact, the Supreme Court already considered *Riverwoods* when it found distinctness

between a corporation serving as an enterprise and a defendant person as the employee who is

the corporation's sole owner. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163, 121

S. Ct. 2087, 2091, 150 L.Ed.2d 198, 204 (2001) . In the underlying Second Circuit case,

"Petitioner sued Don King, the president and sole shareholder of Don King Productions, a

corporation, claiming that King had conducted the boxing-related affairs of Don King

Productions in part through a RICO 'pattern,' . . . ." *Cedric Kushner Promotions, Ltd. v. King*,

533 U.S. 158, 160, 121 S. Ct. 2087, 2089, 150 L.Ed.2d 198, 203 (2001).

Indeed, *Riverwoods* "involved quite different circumstances which [were] not presented" in

Kushner nor presented here. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 164, 121

S. Ct. 2087, 2091, 150 L.Ed.2d 198, 205 (2001).

Defendant's second argument, that the Complaint fails to allege that Defendants shared a

common purpose, fare no better by ignoring the Complaint's allegations. Motion, p. 8. While

the Motion does identify individual Defendants and their illegal conduct, it fails to cite all actions

in the Complaint. Motion, p. 8.

Defendants are wrong when they argue that the Complaint does not show how the

Defendants functioned together. Motion, p. 8. Moreover, additional requirements such as

"plead[ing] any hierarchy" is not required. Motion, p. 8. *Equinox Gallery Ltd. v. Dorfman*, 306

F. Supp. 3d 560, 570 (S.D.N.Y. 2018)(quoting *Boyle v. United States*, 556 U.S. 938, 948, 129 S.

Ct. 2237, 173 L. Ed. 2d 1265 (2009))("An enterprise need not . . . a "'hierarchical structure.''").

### C. Inexplicably, Defendants Ignore Portions Of The Complaint Explaining Defendants' Roles In The Rico Enterprise.

As explained above, the Complaint has alleged all participation details of the Defendants'

currently known to Plaintiff.  Motion, p. 9.  In their argument, Defendants rely heavily upon *De*

*Sole et al v. Knoedler Gallery, LLC et al*.  974 F. Supp. 2d 274 (S.D.N.Y. 2013).  However, by

relying upon the court's opinion, and not focusing on the cases procedure, Defendants reliance

bolsters Plaintiff's point. That is, for Plaintiff to prove its case, discovery is necessary to add

details - such as invoices, emails, supplier information, and customer information – that are not

publicly available.

For instance, in Defendants' cited case, *De Sole* (2013), the court decided the case upon

Plaintiffs' First Amended Complaint.  *De Sole v. Knoedler Gallery, LLC*, 974 F. Supp. 2d 274,

293 (S.D.N.Y. 2013).   While the court dismissed several claims, it granted plaintiffs leave to

amend their complaint for a second time.  *De Sole v. Knoedler Gallery, LLC*, 974 F. Supp. 2d

274, 321 (S.D.N.Y. 2013).   Defendants filed their second amended complaint on November 4,

2013.  *De Sole v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 387, 399 (S.D.N.Y. 2015).

In between plaintiffs' first and second amended complaints, plaintiffs conducted extensive

discovery.  For instance, they conducted written discovery requests and disputed written

responses.  *See* CIVIL DOCKET FOR CASE #: 1:12-cv-02313-PGG-HBP, Doc. 48 (Discovery

Order).  Additionally, many depositions occurred between the two complaints and their opinions

on motions to dismiss.  *See* CIVIL DOCKET FOR CASE #: 1:12-cv-02313-PGG-HBP, Doc. 56

(depositions of Ms. Glafira Rosales, Mr. Jose Carlos Bergantinos Diaz).  Plaintiffs' discovery

revealed many of the missing pieces that Defendants here cite to and culminated in the *De Sole* (2015) court denying DEFENDANTS' motion to dismiss RICO claims.

## V. THE COMPLAINT STATES CLAIMS FOR VIOLATIONS OF NEW YORK LAW

Defendants' main claim regarding state law claims is that without federal RICO claims, this Court should "decline to exercise pendent jurisdiction" over them. Motion, p. 17. Clearly, Plaintiff disagrees that the complaint fails to state a RICO claim; thus, obviating this argument.

But, when addressing each state claim, Plaintiff also disagrees.

### A. Warranty Allegations Relevant to All Warranty Claims

#### 1. DGL is a Merchant

"Under New York state's version of the UCC, this guarantee is 'implied in a contract for . . . sale if the seller is a merchant,' N.Y. U.C.C. § 2-314(1)--that is, if the seller, inter alia, 'deals in' the type of goods sold, *id*. § 2-104(1)." *Caronia v. Philip Morris United States, Inc*., 715 F.3d 417, 433 (2d Cir. 2013).

Many of Defendants' state law claim arguments rely upon that their assertion that DGL is not a merchant. Motion, ¶ VII (Non-Infringement – Seventh Claim); VIII (Warranty Claims – Fourth, Fifth, and Sixth Claims). This may or may not be true, but when considering the allegations in the Complaint as true, this reliance is misplaced. The Complaint cites many instances of DGL being a merchant. "Defendants own and operate stores that sell electronic consumer goods." Compl., 8, 21. Plaintiff "purchased hundreds of Samsung Chargers" on multiple occasions. Compl., ¶ 42. With this established, many of their arguments fail.

However, Plaintiff agrees that individually named Defendants are not "merchants." Motion, p. 22. "The terms of the Purchase Orders include representations by Distributor that it did not sell counterfeit goods." Compl., ¶ 32. This meant that Distributor (DGL) made

representations. It also means that Plaintiff does not bring warranty claims against the individually-named Defendants.

### 2. *The Counterfeit Goods were Authentic.*

On several occasions, Defendants' implied that they were selling genuine Samsung Chargers by verbally stating the items they sold were "authentic" or by including the word "Samsung" on offers. Compl., ¶ 45. Though Defendants never used the word "Samsung" on any of its invoices, early emails between the Defendants and Plaintiff did contain the name "Samsung'" in later emails, Defendants switched to using some form of short-hand notation instead. ¶ 45. For example, rather than writing "Samsung Wireless Charging Pad" Defendants would simply write "Wireless Pad" or "Pad." ¶ 45.

Additionally, sometimes Defendants would refer to an item by its model number or the unique part of its model number such as "TA20" to stand in for "Samsung EP-TA20JWE." ¶ 45. However, when speaking in person or on the telephone, Defendants often resorted to using the name "Samsung." ¶ 45. During multiple conversations regarding Samsung purchases, Wahba did in fact refer to the chargers as "Samsung" chargers. Compl., ¶ 45. Furthermore, Wahba routinely asked if Plaintiff needed anymore "Samsung." ¶ 45. When Plaintiff began receiving customer complaints, Wahba reassured Plaintiff that everything was 100% authentic. ¶ 45. Moreover, after Amazon suspended Plaintiff's account, Sardar, in an email reply to Plaintiff, stated that everything was authentic. ¶ 45.

DGL's invoice demonstrated that the sale was for authentic Samsung Chargers. ¶ 45. Additionally, Defendants charged Plaintiff fair market price for the wireless chargers. Compl., ¶ 45. Accordingly, Plaintiff "purchased the Samsung Chargers with the understanding that they were all authentic Samsung products." Compl., ¶ 52.

### B. Breach Of Express Warranty

> "An express warranty is '[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain.' N.Y. U.C.C. § 2-313(1)(a). 'In order to demonstrate that an express warranty was created under New York law, a plaintiff 'must prove that the statement falls within the definition of warranty, that she relied on it, and that it became part of the basis for the bargain.' *Kraft v. Staten Island Boat Sales, Inc.*, 715 F. Supp. 2d 464, 473 (S.D.N.Y. 2010) (quoting *Daley v. McNeil Consumer Prods. Co.*, 164 F. Supp. 2d 367, 377 (S.D.N.Y. 2001)).

*De Sole v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 387, 420-22 (S.D.N.Y. 2015).

Plaintiff entered purchase orders for authentic Samsung goods. That warranty was breached when Defendants sold counterfeit goods.

### C. Breach Of Implied Warranty (Fourth Claim) & Breach Of The Implied Warranty Of Fitness For A Particular Purpose N.Y. U.C.C. Law § 2-314 (Sixth Claim)

"The implied warranty of merchantability is a guarantee by the seller that its goods are fit for the intended purpose for which they are used and that they will pass in the trade without objection." *Caronia v. Philip Morris United States, Inc.*, 715 F.3d 417, 433-34 (2d Cir. 2013)(quoting *Saratoga Spa & Bath, Inc. v. Beeche Systems Corp.*, 230 A.D.2d 326, 330, 656 N.Y.S.2d 787, 789 (3d Dep't 1997)).

"If a seller of goods is a merchant, there is an implied contract that the goods will be of merchantable quality." *Fagan v. AmerisourceBergen Corp.*, 356 F. Supp. 2d 198, 215-16 (E.D.N.Y. 2004)(citation omitted). "The inquiry in a warranty claim is whether the product was 'fit for the ordinary purposes for which such goods are used.'" *Id.* (internal quotations and citation omitted).

#### 1. The Complaint States Sufficiently a Claim for Breach.

The Samsung chargers were to be used to sell to consumers. The counterfeit Samsung Chargers, purchased from Distributor, do not have three light colors. Compl., ¶ 95. Rather, they only have a single color when used and do not change during different charging statuses. Compl.,

¶ 95. The counterfeit Samsung Chargers sometimes get extremely hot when used. ¶ 96. The counterfeit Samsung Chargers do not work consistently with charging and their functions are intermittent. Compl., ¶ 97.

According to the Samsung website, the Samsung Wireless Charging Pad is Qi certified by the Wireless Power Consortium (WPC). http://www.samsung.com/us/mobile/mobile-accessories/phones/wireless-charging-pad-black-sapphire-ep-pg920ibugus/ (last visited October 18, 2017). Compl., ¶ 101. This certifies the wireless charger does not induce voltages that can potentially cause damage to the product. Compl., ¶ 102. The only acceptable proof that a wireless charger is compatible and safe is that the product can be found in the Qi Certified Product Database; all products must match by brand name, product name, and type number. Compl., ¶ 102. In order to receive a certification from the WPC, the manufacturer must provide an authentic product for testing; if the product is not authentic, it likely has not been certified as safe by the WPC and will not appear in the database. https://www.wirelesspowerconsortium.com/products/ (last visited October 18, 2017). Compl., ¶ 102.

Wireless chargers generate strong magnetic fields. Compl., ¶ 103. When the field is too strong it can induce voltages that damage mobile phones and other related devices. https://www.wirelesspowerconsortium.com/products/ (last visited Jul. 18, 2017). Compl., ¶ 103.

Importantly, the Samsung Chargers come with a warning –



⚠ **WARNING:** This product can expose you to chemicals including one or more listed chemicals which are known to the State of California to cause cancer or birth defects or other reproductive harm. For more information, go to www.P65Warnings.ca.gov

https://www.newegg.com/Product/Product.aspx?Item=0S8-0001-010A2 (last visited October 18,

2017).  Compl., ¶ 104.

## 2. Defendants' Arguments Fail to Prove Otherwise

Defendants shift focus for fitness from whether they were counterfeit to whether there were

safety issues.  They are wrong for two reasons.  First, all counterfeit goods are unfit to sell.

Second, safety issues are commonly unfit, and the complaint alleges this.  Motion, p. 22 (citing

Compl., ¶¶ 99, 100-104).

## D.  Breach Of The Warranty Of Non-Infringement Under N.Y. U.C.C. Law § 2-312

Section 2-312 of the New York Uniform Commercial Code provides, in relevant
part:

Unless otherwise agreed, a seller who is a merchant regularly dealing in goods of
the kind warrants that the goods shall be delivered free of the rightful claim of any
third person by way of infringement or the like, but a buyer who furnishes
specifications to the seller must hold the seller harmless against any such claim
which arises out of compliance with the specifications.

N.Y. U.C.C. § 2-312(3). The Official Comment to § 2-312(3) states: "When
goods are part of the seller's normal stock and sold in the normal course of
business, it is his duty to see that no claim of infringement of a patent or
trademark by a third party will mar the buyer's title." *Id*. cmt. . . . .

. . .

To establish a breach of the warranty of non-infringement under § 2-312(3), "the
plaintiff buyer must show that the seller: (1) was a merchant regularly dealing in
goods of the kind; (2) the goods were subject to a rightful infringement claim of
any third party upon delivery; (3) the buyer did not furnish specifications to the
seller; and (4) the parties did not form another agreement" that relieved the seller
of the warranty.

*Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, No. 12-CV-5354 (KAM) (RLM),

2016 U.S. Dist. LEXIS 44496, at *43-45 (E.D.N.Y. Mar. 31, 2016)(citations omitted).

While Defendants are correct that individually they are not liable for non-infringement, they

are incorrect when arguing that DGL is not liable because "it [did not] regularly deal[] in

Samsung merchandise . . . ."  Motion, p. 21.  Just reviewing the amount and dates that Plaintiff purchased demonstrates that they have a large quantity and commonly deal with them.

In sum, DGL sold goods that infringed trademarks and were counterfeit in nature, which breaches DGL's duty.

### E.  New York Deceptive Business Practices New York General Business Law § 349

New York General Business Law § 349 makes unlawful "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." Similarly, New York General Business Law § 350 provides that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

*Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F. Supp. 2d 439, 450-51 (E.D.N.Y. 2007).

To establish a *prima facie* case under section 349, a plaintiff must demonstrate that "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result."

*Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F. Supp. 2d 439, 450-51 (E.D.N.Y. 2007).

Defendants wanted to trick consumers into purchasing authentic goods.  However, they were counterfeit, which was misleading to consumers.  Plaintiff was no longer able to sell the goods because of it.

### F.  Common Law Unfair Competition

New York courts "have long recognized two theories of common-law unfair competition: palming off and misappropriation." *ITC Ltd. v. Punchgini, Inc.*, 2007 NY Slip Op 9813, ¶ 6, 9 N.Y.3d 467, 476-77, 850 N.Y.S.2d 366, 372, 880 N.E.2d 852, 858(citing *Electrolux Corp. v Val-Worth, Inc.*, 6 NY2d 556, 567-568, 161 NE2d 197, 190 NYS2d 977 [1959] [discussing the acceptance of these theories of unfair competition in New York courts and collecting cases]).

"'Palming off'--that is, the sale of the goods of one manufacturer as those of another --was the first theory of unfair competition endorsed by New York courts, and "has been extended . . . to

situations where the parties are not even in competition" *ITC Ltd. v. Punchgini, Inc.*, 2007 NY Slip Op 9813, ¶ 6, 9 N.Y.3d 467, 476-77, 850 N.Y.S.2d 366, 372, 880 N.E.2d 852, 858 (citations omitted).

### 1. The Complaint States Sufficiently Unfair Competition Through Palming Off.

Where, as here, "the defendant substitutes its products for the plaintiff's without notice to the purchaser, the defendant is normally found liable for palming off or passing off, **if not counterfeiting**." 5 Gilson on Trademarks § 5.09 (2018)(emphasis added). DGL supplanted their counterfeit goods for authentic ones.

### 2. Defendants' Argument Fails Because They Failed to Address Palming Off.

Defendants are wrong about limiting common law unfair competition because they limit the claim to misappropriation of "plaintiffs' labors, skills, expenditures, or good will . . . ." Motion, p. 18 (citation omitted).

## VI. MOTION FOR LEAVE TO AMEND COMPLAINT

While Plaintiffs believe amending its complaint is unnecessary in light of the foregoing, should the Court require additional information in order to supplement its claims, Plaintiffs respectfully request leave to do so after conducting discovery

## VII. CONCLUSION

The Court should dismiss the Motion in its entirety as Defendants have improperly omitted facts that make the Complaint plausible, relied upon factually-distinct case law, and contorted the Complaint's allegations to fit their miscited law.

Dated this 29TH day of March 2019
Long Beach, NY

Respectfully submitted by:
_/s/ *Cory J. Rosenbaum,*_____
Cory Rosenbaum, Esq.
Rosenbaum Famularo, P.C.
*Counsel for Plaintiff*
100 W Park Ave, Suite 310
Long Beach, NY 11561
(212) 256-1109